**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| J.R., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 CV 8145 |
| | ) | |
| v. | ) | Judge Dow |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF | ) | Magistrate Judge Schenkier |
| CHICAGO, et al | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT AT LAW**

Plaintiff J.R., by and through their attorneys, DINIZULU LAW GROUP, LTD., complaining of the Defendants, BOARD OF EDUCATION OF THE CITY OF CHICAGO, LEGAL PREP CHARTER ACADEMIES, and JAMEL M. HELAIRE-JONES, states as follows:

**INTRODUCTION**

1.      Plaintiff brings this matter to redress the sexual abuse and discrimination occurring by Defendants Board of Education of the City of Chicago ("Board"), Legal Prep Charter Academies, and Jamel M. Helaire-Jones ("Helaire-Jones")(collectively referred herein as "Defendants"). Plaintiff brings this matter seeking damages for the various violations of the laws of the United States and State of Illinois arising from Defendants' acts and omissions resulting in harm to J.R.

**JURISDICTION  AND VENUE**

2.      This case is brought under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, to redress the sex discrimination against Plaintiff (Count I); 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs rights as secured by the United States Constitution (Counts II-IV), and various state law claims (Counts V-VI).

3.      This Court has jurisdiction of the action under 28 U.S.C. §§ 1331 and  1367. Venue is proper under 28 U.S.C. § 1391(b).

1

4.     On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims here all occurred within this district.

## PARTIES

5.     J.R., is a citizen of the Cook County and citizen of the State of Illinois and was a minor at the time of the sexual assault alleged in this complaint.

6.     Defendant Board is a body politic and corporate under the laws of the State of Illinois. Defendant Board maintains offices at 42 W. Madison Street, Chicago, Cook County, Illinois.

7.     Defendant Board is and was responsible for the governance, organizational, and financial oversight of the staff and administration of Chicago Public Schools ("CPS"), the third largest school district in the United States of America. Defendant Board, acting through its agents, servants, and/or employees, is engaged in, among other things, the provision of education, care, and development services. Defendant Board is responsible for its own acts or omissions and the conduct of its employees and/or agents under *respondeat superior*.

8.     Defendant Legal Prep Charter Academies is a not-for-profit corporation under the laws of the State of Illinois.

9.     Defendant Legal Prep Charter Academies owns and operates a charter school, Legal Prep Charter Academy ("Legal Prep"), located at 4319 W. Washington Boulevard, Chicago, Illinois, which is a public school funded, managed, and controlled by the Board. Defendant Legal Prep Charter Academies received authority delegated to it by Defendant Board.

10.     Defendant Helaire-Jones is and/or was an employee of Defendants Board and Legal Prep Charter Academies. At all times relevant herein, Defendant Helaire-Jones worked as a basketball coach at Legal Prep Charter Academy in the City of Chicago, County of Cook, State of Illinois.

11.     At the time of the incident in this complaint, Defendant Helaire-Jones was engaged in the complained of conduct while acting within the scope of his employment and under color of state law. Defendant Helaire-Jones is sued in his individual capacity and as agent and/or employee of Defendants

2

Board and Legal Prep Charter Academies.

### **FACTS COMMON TO ALL COUNTS**

12.    Attached and hereforth incorporated as a whole into the facts of this Complaint, are the following:

     a.    Legal Prep Charter Academy Staff Handbook, bate-stamped as LP 00001-51 – **EX 1** (not filed as confidential).

     b.    Grant of Charter and Charter School Agreement, bates-stamped LP 0000052-000110– **EX 2** (not filed as confidential).

     c.    Renewal of Charter and Charter School Agreement between the Board of Education of the City of Chicago and Legal Prep Charter Academies, Inc. , bate-stamped as BOE 0000039-103 – **EX 3** (not filed as confidential).

     d.    Background Checks and Adjudication Process Agreement, bate-stamped as BOE 000104-000111 – **EX 4** (not filed as confidential).

     e.    Employment File of Defendant Jamel M. Helaire-Jones, bate-stamped as BOE 000001-35 – **EX 5** (not filed as confidential)

     f.    Terms of Offer for Jamel Jones, bate-stamped as LP0000111 – **EX 6** (not filed as confidential)

     g.    Acknowledgements signed by Defendant Jamel M. Helaire-Jones, bate-stamped as LP000112-115 – **EX 7** (not filed as confidential)

     h.    Bylaws of Legal Prep Charter Academies, bate-stamped as LP000216-224– **EX 8** (not filed as confidential)

     i.    Investigation of Sexual Assault Allegations, bate-stamped BOE 000112-234 – **EX 9** (not filed as confidential).

13.    For purpose of this complaint, "Staff" means "employees, agents, contractors, subcontractors, and volunteers"  as defined by the Renewal of Charter and Charter School Agreement between the Board of Education of the City of Chicago and Legal Prep Charter Academies, Inc. , bate-stamped as BOE 0000051-

52 (hereinafter, "Renewal of Charter")

14.     The Board of Education is and was responsible for the governance, organizational, and oversight of the staff and administration of Chicago Public Schools ("CPS"), the third largest school district in the United States of America. Defendant Board, acting through its Staff, is engaged in, among other things, the provision of education, care, and development services.

15.     Defendant Legal Prep Charter Academies is a public school funded, managed, and controlled by the Board.

16.     On August 30, 2010, Legal Prep applied to operate as a charter school.

17.     On July 1, 2012, Defendant Legal Prep Charter Academies received authority delegated to it by Defendant Board.

18.     At all relevant times herein, Legal Prep Charter Academy ("Legal Prep") located at 4319 W. Washington Boulevard, Chicago, Illinois provided instructional programming for high- school aged students.

19.     At all relevant times herein, Defendant Board managed and or had sufficient control of Legal Prep and the Staff therein.

20.     At all relevant times herein, Defendant Legal Prep Charter Academies owned, operated, managed, maintained, and controlled Legal Prep and the Staff.

21.     At all relevant times herein, Defendant Helaire-Jones was Staff for the Board and Legal Prep Charter Academies.

        a.      Defendant Helaire-Jones, was brought on as Staff at Legal Prep Charter Academies as the girl's basketball coach starting on or before October 15, 2017 until January 7, 2018.

        b.      Defendant Helaire-Jones was then fulltime Staff as the Disciplinarian and girl's basketball coach from January 8, 2018 to November 30, 2018.

22.     For Charter School's prospective and existing Staff who may have contact with students, the Board

of Education is required to run background checks to prevent the contracting, hiring or continued employment of persons with sexual assault backgrounds.

23.     From April 10, 1996 to November 13, 2017, Board of Education and Legal Prep were bound by paragraph 5, subpart (e) of the Renewal of Charter and Charter School Agreement between the Board of Education of the City of Chicago and Legal Prep Charter Academies, Inc. , bate-stamped as BOE 0000039-103 – **EX 3** (not filed as confidential), which required:

> No later than September 1 and February 1 of *each* year during the term of this Agreement, the Charter School shall provide the Board with a current list of all of *its* employees, and shall cause each of its subcontractors *to* provide the Board with a current list of all of such subcontractor's employees, who may come into contact with students at the Charter School. Such lists shall. contain the names, job positions, Illinois employee identification numbers ,and/ or last four digits of the social security numbers of all applicable employees. Such lists shall also indicate: (i) for each employee,  the results of the. fingerprint-based. Criminal background checks required in Exhibit E (Criminal Background Checks) of this Agreement; and (ii) for each individual employed in an instructional position, evidence of certification, or evidence that such individual *is* otherwise qualified to leach under Section 27A-10(c) of the Charter Schools Law, including information regarding the additional mentoring, training and staff development, if any, to be provided by the Charter School pursuant to paragraph 5.g. of this Agreement. For any person hired in an instructional position after February 1 of any academic year, the Charter School shall provide the Board with. such results of the fingerprint-based criminal background checks and evidence of certification (or other qualification if applicable) as noted hereinabove no later than five (5} business days before the individual's initial date of employment.

24.     Beginning November 14, 2017, Board of Education and Legal Prep were bound by paragraph 5, subpart (f) of the Renewal of Charter and Charter School Agreement between the Board of Education of the City of Chicago and Legal Prep Charter Academies, Inc. , bate-stamped as BOE 0000039-103 – **EX 3** (not filed as confidential).

25.     The Renewal of Charter and Charter School Agreement between the Board of Education of the City of Chicago and Legal Prep Charter Academies, Inc. provides:

> Board shall conduct a criminal history records check on all the Charter School's prospective and existing employees, agents, contractors, subcontractors, and volunteers who may have contact with students; (collectively, "Prospective or Current Staff"). The criminal history records check shall be in accordance with the Illinois School Code (105 ILCS 5/34-18.5); the Sex Offender and Child Murderer Community Notification Law (730 ILCS 152/101 *et seq.);* and the Murderer and Violent Offender Against Youth Registration Act (730 ILCS 154/1 *et seq.).* The Board also shall check for indicated reports *of* child abuse or neglect in the State Automated Child Welfare Information System of the Illinois

Department of Children and Family Services ("DCFS") (or a substantially comparable determination of child abuse or neglect by a government agency in another jurisdiction). In addition, the Board shall perform a check of eligibility for re-hiring from the Board's Do Not Hire ("DNH") records. Collectively, the screenings described in this paragraph shall be referred to as "Background Checks". The Board shall subject the Background Checks to for adjudication process that the Board uses for its own prospective and current staff, and the Board shall share its results, to the extent permitted by law, with the Charter School. (EX 3 - BOE 00051-52)

26.     After the background check is completed, the Board may reject the applicant, require further investigation, and/or accept the application:

A. That the Board would reject a Prospective Staff member or terminate a Current Staff member who had been convicted of any enumerated offense set forth in the Illinois School Code. If the Prospective or Current Staff member has been convicted of an enumerated offense, the Charter School may not employ the Prospective or Current Staff member.

B. That the Board would require additional information from a Prospective or Current Staff member who had a conviction of a non-enumerated offense or whose conviction status is unknown. The Board shall communicate with the Prospective or Current Staff member the need for additional information.

C. After the Board considers the Prospective or Current Staff member's Background Checks, the Board shall inform the Charter School whether: (l) the Board would hire the Prospective Staff member or continue to employ the Current Staff member; (2) the Board would conditionally hire the Prospective Staff member may continue to employ the Current Staff member, pending a final adjudication; or (3) the Board would not hire the Prospective Staff member or would terminate the current Staff Member.

D. If the Board's DNH check reveals a DNH, and the DNH is one of the bases for the Board's opinion that it would not hire the Prospective or Current Staff member, the Board shall provide the Charter School information concerning the basis for the DNH.

27.     Legal Prep was required to provide list of all its employees and contractors on September 1 of every year to the Board of Education.

a.      This list was required to provide:
"the date of initiation of the fingerprint-based criminal background investigation and checks of the Statewide Sex Offender Database and the Statewide Child Murderer and Violent Offender Against Youth Database required under Section 34-18.5 of the School Code and paragraph 5(e) of this Agreement, and the results of such background check."

b.      If a background check had not been done, that person could not be hired or contracted to work with the students:

"The Charter School shall not knowingly employ and shall not permit its subcontractors to knowingly employ any individual who shall come into direct, regular contact with

6

> pupils at the Charter School (i) for whom a fingerprint-based criminal background investigation and checks of the Statewide Sex Offender Database and the Statewide Child Murderer and Violent Offender Against Youth Database has not been conducted or (ii) who has been convicted of committing or attempting to commit one of the offenses enumerated in Section 34-18.S(c) of the Illinois School Code."

28.     The Renewal of Charter and Charter School Agreement between the Board of Education of the City of Chicago and Legal Prep Charter Academies, Inc. provides the Board of Education has final approval of staff:

> Charter School Obligations. The Charter School shall obtain and provide the Board with a signed copy of the Board-approved Release and Consent to Conduct and Disclose Background Investigation and Personnel Information ("Release") from each of its Prospective and Current Staff members in the form provided by the Board. The Charter School shall not allow any Prospective Staff to have contact with students (i.e., via test messages, lives chats, emails, telephone, in person, or through any other means) until the Charter School receives the results of the Prospective Staff member's Background Checks and the Board's adjudication. The Board reserves the right to modify the form of the Release from time to time.

29.     At all times, Defendant Board had and has absolute authority and responsibility to accept, reject, suspend, discipline and terminate any Staff to be hired or that is hired at Legal Prep, including but not limited to Defendant Helaire-Jones.

30.     According to the June 27, 2018 RESOLUTION REGARDING INSPECTOR GENERAL NICHOLAS SCHULER:

> In addition to those duties conferred upon the Inspector General by the Illinois School Code and Board Rules, the Inspector General is hereby empowered to investigate reports of sexual misconduct by employees, vendors, or volunteers where a CPS student may be the victim. The Inspector General shall carry out these duties in accordance with the following guidelines:

> (a) The Inspector General shall report to the Board on a monthly basis, including the number of reports received, the number of claims under investigation, the employees and schools involved, the nature of the allegations, and the status of any person subject of an investigation;

> (b) The Inspector General shall have sole responsibility within the Chicago Public Schools and the Board of Education for the investigation of all reported incidents described in Section 1 of this Resolution, however, the Inspector General shall reasonably and appropriately cooperate with CPS staff and attorneys to ensure that employee discipline is not delayed and that information regarding the status of abuse reports and investigations are shared on a timely basis; and

7

(c) Decisions regarding discipline, including termination, shall remain solely under the purview the Chief Executive Officer of the Chicago Public Schools ("CEO") and the Board. The Board and the CEO, however, shall reasonably and appropriately cooperate with the OIG to ensure that criminal investigations are not unduly jeopardized by the timing of discipline or termination.

31.    Defendant Board and Legal Prep's top priority is to ensure students have a safe and welcoming learning environment.

32.    Despite the Charter between the Board of Education and Legal Prep requiring background checks of Charter School's prospective and existing Staff who may have contact with students, there was no background check performed for Jamel Helaire-Jones until after he was already working at Legal Prep.

    a.    Defendant Helaire-Jones, was brought on as Staff at Legal Prep Charter Academies as the girl's basketball coach starting on or before October 15, 2017 until January 7, 2018.

    b.    A background check was not run within five days of his start date of October 15, 2017.

    c.    The background check for Defendant Jamel Helaire-Jones was run on December 26, 2017.

    d.    Jamel Helaire-Jones became a full time employee at Legal Prep as a Disciplinarian in January 8, 2018.

    e.    On February 15, 2018, the Board of Education determined that Jamel Helaire-Jones was not eligible to be hired:

        i.    Defendants were required to terminate Jamel Helaire-Jones contact with students in the position as coach and disciplinarian.

        ii.    Legal Prep had notice of the background check, and/or in the alternative, were bound to not hire or allow any contact with students.

    f.    Jamel Helair-Jones continued to work with the students until November 28, 2018, when he was sent home.

    g.    On November 30, 2018, Jamel Helair-Jones was terminated.

33.    At all times relevant, Defendants Board and Legal Prep Charter Academies provided Defendant

Helaire-Jones with unlimited authority and access to the Legal Prep facilities.

34.     The background check for Defendant Jamel Helaire-Jones run on December 26, 2017, revealed:

      a.     Defendant Jamel Helaire-Jones had been arrested and/or charged with abduction (kidnaping) and attempted sexual assault of an 18-year-old female in Battle Creek, Michigan.

      b.     Defendant Jamel Helaire-Jones had domestic battery charges in 2010 and 2012.

      c.     In addition, Defendant Helaire-Jones was convicted of a robbery charge in Michigan in 2005. https://abc7chicago.com/coach-charged-sex-abuse-charter-school-assault-student/5042454/#:~:text=Prosecutors%20said%20in%20court%20that,at%20a%20court%20appearance%20Wednesday.

35.     At all relevant times herein, J.R. attended Legal Prep as a student.

36.     At all relevant times herein, J.R.'s date of birth was December 24, 2000.

37.     At all relevant times herein, Defendant Helaire-Jones was an adult in his early thirties and at least fifteen years older than J.R.

38.     At all times relevant, Defendant Helaire-Jones initiated a sexual relationship with J.R., who was a student and member of the girls' basketball team at Legal Prep Charter Academy as well as a minor without the legal ability to consent to sex.

39.     At all times relevant, Defendant Helaire-Jones groomed and encouraged J.R. to engage in numerous sexual acts with him on and off the property of Legal Prep, utilizing the authority provided by the Defendants Board and Legal Prep.

40.     J.R. had been subjected to repeated advances that progressed over time from Defendant Helaire-Jones, including but not limited to:

      a.     Defendant Helaire-Jones would tell her that her hair looked pretty

      b.     Defendant Helaire-Jones would text her "I like you" and to share "a dark secret" or "something no one knows"

c. When discussing birthdays, J.R. asked Defendant Helaire-Jones what Defendant Helaire-Jones wanted for his birthday, and he said "you"

d. Defendant Helaire-Jones told J.R. that "he was going to keep things 'discreet' by telling his girlfriend that J.R. was just a student 'so [his girlfriend] wouldn't trip about it'"

e. Defendant Helaire-Jones told J.R. "I'm your daddy," "I'm your best friend," "I'm your protection, and "I'm your lover"

f. Defendant Helaire-Jones told J.R. – "See right now I could be eating your pussy right now". JR believed the dean, who was walking by heard it, but he did not say anything.

g. Defendant Helaire-Jones called her into the elevator on the way to or from the bathroom and gave her demerit tickets for good behavior. Defendant Helaire-Jones said "you know I like you" and "you're pretty." Defendant Helaire-Jones then "grabbed [her] booty" with his hands, over her uniform.

h. On two occasion, Defendant Helaire-Jones tried to grab her breasts.

i. Defendant Helaire-Jones hugged JR in the elevator, and then squeezed her breasts, and made moaning sounds and was breathing heavy.

j. While in the parking lot, Defendant Helaire-Jones put his hand inside J.R. pants and penetrated her with his fingers.

k. Defendant Helaire-Jones kissed J.R. on more than once occasion.

l. Defendant Helaire-Jones asked J.R. to perform oral sex.

m. Defendant Helaire-Jones texted J.R. a picture of his genitals.

n. Defendant Helaire-Jones sexually assaulted J.R., age 17, and another student Z.R., age 14, in the gymnasium.

41. Defendant Helaire-Jones also sexually assaulted Z.R., on more than one occasion which is subject to separate lawsuit, *Chimika Walker, as Parent and Next Friend of Z.R., a Minor, v. Board of Education, et al*, Northern District Case 1:19-CV-04115:

10

a.   Defendant Helaire-Jones gave Z.R. a ride home from school, and went into an alley, and "pulled out his penis" and had Z.R. performed oral sex on Jones.

b.   Defendant Helaire-Jones kissed Z.R. in the bathroom, while Jones' daughter was in the another stall.

c.   Defendant Helaire-Jones had Z.R. perform oral sex at a summer basketball camp.

d.   Z.R. sent Defendant Helaire-Jones photos via text of her in her underwear.

e.   Defendant Helaire-Jones told Z.R. "that when he has sex with his girlfriend, 'she never makes him cum."

42.   At all times relevant and prior to the sexual conduct that occurred against J.R., Defendants knew of the dangerous and harmful conduct of Defendant Helaire-Jones, but allowed him to continue to work with students:

a.   Defendant Helaire-Jones had a reputation for harassing and being sexually inappropriate with multiple students – ie "there were rumors that Jones had sexual interactions with students."

b.   Counselor Sotoudeh knew about the allegations against Defendant Helaire-Jones, but in her own opinion found them unsubstantiated. According to the Officer of Inspector Genreal's Investigation.

  i.   On November 8, 2018, Counselor Sotoudeh had students A.J., D.W, N.K., W.B, and Z.R. draft about the initial incident. Sotoudeh also typed a summary of the statements and made a conclusion about whether the allegation was substantiated.

  ii.   Counselor Sotoudeh was told by student D.W:

      She said that she feels like Mr. Jones is interested in her because he asks her for hugs and asked her for her phone number. She said it made her feel uncomfortable.

  iii.   Z.R. wrote in her statement on November 8, 2018:

11

During lunch period I came and told MS. S. that there was rumors Going around saying that I was sending Mr. Jones nudes. Saying that me and him talk when that's not the case. Ms. Ashley pulled me out of the class and asked do I talk to him I said no she asked me again and agains I said No if it was anything I would tell you. She said that 5 girls (no names) came up to her and said you need to talk to Z.R. and that they told her that I was talking to him and that I was sending him nudes. So we get to Spanish class and Ms. Hayes asked me in class so I talk to him I said no I said that's A is the one that is going around saying that because she seen a appreciation letter in my binder that wasn't anything inappropriate. But when I showed her the letter on Nov. 7. 18 it looked like she got mad by it. Because she would always say that she like him and how good he look and if they was to talk she would use him for his money. Then at lunch on November 7, 2018 she though I was looking at him and she was like why you looking ay my man. I didn't say nothing. Then I guess she told Ms. Ashley about me giving him a brownie that I didn't want. He ate it. that's nothing inappropriate. That's it. Ms. Ashley also said that she didn't fucking like him because they got into it so every since then they don't see eye to eye.

c.   The Office of Inspector General's Investigation found:

On November 9, 2018, Principal Ramirez sent an email to the CPS Title IX Coordinator to report two situations involving Legal Prep HS staff members and students. Ramirez reported that the first incident involved Legal Prep HS student W B ( ). A non-student made a Facebook post on November 6, 2018 stating that  Legal Prep HS deans are creepy. B then posted something to the effect that Jones had not  done anything yet, but he would if given the chance. Jones was alerted to the post and approached B about it. B said she posted it as a joke and wrote Jones an apology letter about the post. Administration was alerted to the post on November 8, 2018.

d.   On November 8, 2018, Defendants discovered that there were inappropriate texts between

Z.R. and Defendant Helaire-Jones. The Office of Inspector General's Investigation found:

Ramirez also stated that students K and W spoke to a disciplinarian and told her that fellow student Z was showing text messages between her and Jones during Spanish class. Administration was informed about it on November 8, 2018. When Ramirez learned about the incidents, she approached school counselor Lily Sotoudeh and asked her to pull the students and have them write incident  Reports. Ramirez and Legal Prep HS COO Rather Stanton then began meeting with the involved disciplinarians.

43.   Defendants Board and Legal Prep's Staff did not immediately report the allegations to DCFS until November 27, 2018.

44.   The  allegations  against  Defendant  Helaire-Jones  required  immediate  suspension  pending  a

thorough investigation, but Defendant Helaire-Jones continued to work with students until November 28, 2018.

45.     On November 28, 2018, Defendant Helaire-Jones was sent home by Legal Prep Principal Katie-Jo Ramierz on November 28, 2018 and advised not to return for the rest of the week.

46.     Legal Prep HS terminated Defendant Helaire-Jones employment as of November 30, 2018.

47.     On or about January 7, 2019, Defendant Helaire-Jones was arrested and charged with criminal sexual assault of J.R.

48.     On February 26, 2019, Chicago Public School's Mary Bradley, addressed the assault and concern about the hire:

> On November 14th, 2017, Legal Prep Charter Academies signed the *Background Checks and Adjudication Process Agreement* with Chicago Public Schools. Under that agreement, the Board undertook to do a background check on Mr. Jones. As you know, the check revealed an arrest for sexual assault. As stated in Recital 4(b) of the agreement, the Board sought additional information from Mr. Jones to get a clear understanding of the disposition of that arrest. Mr. Jones failed to provide any additional information.
>
> Pursuant to our agreement, on February 16, 2018, the Board sent to Legal Prep Charter Academy Legal Prep) its Final Candidate/Current Employee Report on Mr. Jones which advised you that Mr. Jones would not be eligible for hire by CPS because he failed to submit requested documentation within the allotted time frame. The Board also provided you the background report stating that Mr. Jones had a sexual assault case in the state of Michigan. Despite this information, Legal Prep proceeded to hire Mr. Jones. Mr. Jones has now been brought up on sexual assault charges involving three Legal Prep students.

49.     At all relevant times, J.R. was a minor and could not consent to the sexual advances of Defendant Helaire-Jones, whether they were "welcome" or "unwelcome."

50.     According to Legal Prep's Staff Handbook, sexual harassment required immediate termination:

> Employees should be aware that violation of any of the following employee standards of conduct may result in disciplinary action, up to and including immediate termination of employment:… Verbal, physical, or visual forms of harassment directed at any person associated with Legal Prep, or discriminatory treatment of any person associated with Legal Prep, where such discrimination or harassment is based on race, color, religion, national origin, sex, age, disability, or any other protected status. This prohibition also covers any form of sexual harassment, including unwelcome sexual advances, requests for sexual favors, and other verbal, visual or physical conduct of a sexual nature.

51.     Legal Prep's Staff Handbook provides a detailed description of the definition of Sexual

Harassment: "

    a.   Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal, or physical conduct of a sexual nature.

    b.   A partial list of sexual harassment examples include:

        i.   Verbal:   Unwanted repeated sexual innuendos, sexual epithets, obscene or sexually suggestive comments about a person's body or dress, unwelcome flirtations, unwanted sexual advances or propositions, threats

        ii.   Visual/Non-verbal   Demeaning or sexually explicit posters, cartoons, photographs, magazines, drawings, or other printed items; suggestive objects or pictures; suggestive or obscene letters, notes or invitations; emails, screen-savers or other electronic communication; graphic commentaries; leering or obscene gestures.

        iii.   Physical   Unwanted physical contact, including inappropriate touching, impeding or blocking movements, interference with an individual's normal work movement or assault.

52.    Legal Prep's Staff Handbook provides:

    Violent acts or threats of violence made by an employee against another person's life, health, well-being, family or property, are entirely unacceptable and cause for immediate termination of employment. This policy applies to any threats made on campus property, at campus events, or under other circumstances that may adversely affect Legal Prep.

53.    Sexual Harassment and assault of a minor is an act of violence.

54.    Once law enforcement learned of the above information, Defendant Helaire-Jones was arrested and charged with criminal sexual assault of J.R. This criminal matter is currently pending in Cook County, Illinois.

55.    On September 6, 2019, the Office of Inspector General found that the evidence in the matter supports a finding of sexual misconduct of Defendant Helaire-Jones.

56.    As a result of Defendants' actions, J.R. suffered injuries, including: pain and suffering, emotional injury, and theft of a her dignity, well-being and self.

## BOARD OF EDUCATION SEXUAL MISCONDUCT REPORT

57.    On August 16, 2018, Defendant Board, through its retained counsel, released its Preliminary Report

entitled "Preventing and Responding to Sexual Misconduct against Student in Chicago Public Schools (hereinafter "Report")." *See generally* Report attached and incorporated into the facts hereto as **EX 10**.

58.     According to the Report, between 2008 and 2017, the Chicago Police Department conducted 523 investigations that involved sexual assault or abuse of children within Chicago schools by fellow students or adults. *Id.* at 9.

59.     The Report further revealed that former CPS employees were alleged to have been the perpetrators in seventy-two (72) of 108 cases selected by the Chicago Tribune. *Id.*

60.     According to the Report, the Chicago Tribune also found systematic failures, including ineffective background checks that caused adults to victimize CPS students. *Id.*

61.     According to the Report, the investigative team found "systematic deficiencies in CPS' efforts to prevent and respond to incidents of sexual misconduct" occurring at all levels of the schools, the networks, the Central Office, and the Board, and that, "[w]hile there were policies and procedures about sexual misconduct on the books, employees were not consistently trained on them, and there were no mechanisms to ensure that they were being uniformly implemented or to evaluate their effectiveness." *Id.* at 1.

62.     The Report documented numerous student-safety issues that Defendant Board employees must address every year, including crime, drugs, school violence, abuse and neglect at home, mental health, emergency medical conditions, accidents, and homelessness. *Id.* at 2.

63.     The Report went on to state that "[m]any of these threats are both more prevalent and visible than sexual misconduct. For this reason, some employees and schools may have allocated more time and resources toward these dangers, which caused them to give insufficient attention to sexual misconduct." *Id*

64.     Before the release of the Report on August 16, 2018, Defendant Board enacted a policy to run new and current background checks on all CPS employees, vendors, and volunteers, and requiring periodic background checks, including employees for Defendant Legal Prep Charter Academies. *Id* at 3.

65.     Given this updated background policy, Defendants Board and Legal Prep Charter Academies knew

or should have known that Defendant Helaire-Jones possessed a criminal background that made him unqualified to work in a school with students which included: an arrest for kidnapping and attempted sexual assault, a domestic battery arrests in 2010 and 2012, and convicted of a robbery charge in Michigan in 2005. https://abc7chicago.com/coach-charged-sex-abuse-charter-school-assault-student/5042454/#:~:text=Prosecutors%20said%20in%20court%20that,at%20a%20court%20appearance%20Wednesday.

66.     Due to Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to the safety of the students and to the enforcement of performing background screening on their employees, Defendants Board and Legal Prep Charter Academies retained Defendant Helaire-Jones to work with students, including J.R.

67.     Defendants Board and Legal Prep Charter Academies maintained a widespread practice and custom of improper sexual contact between CPS employees and their students.

68.     Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to the widespread practice and custom of improper sexual contact between CPS Employees and their students created the plainly obviously consequence of abuse by Defendant Helaire-Jones upon J.R.

69.     Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to CPS employees' improper sexual contact with students created a specific and identifiable threat to the students working with Defendant Helaire-Jones.

70.     Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to CPS employees' improper sexual contact with students effectively encouraged Defendant Helaire-Jones to believe that he could engage in improper and unauthorized sexual contact with students without fear of reprisal or discipline.

71.     Defendant Board's and Defendant Legal Prep Charter Academies' acted with deliberate indifference and in a manner that shocks the conscience by permitting Defendant Helaire-Jones to

work with students, including J.R.

72.     As a result of Defendant Board's and Defendant Legal Prep Charter Academies' conduct, J.R. suffered harm.

### INSPECTOR GENERAL REPORTS

73.     The Office of Inspector General for the Chicago Board of Education is the independent oversight body for Chicago's public, contract, and charter schools.

74.     The Office's Sexual Allegations Unit investigates allegations of sexual misconduct by a CPS-affiliated adult, including employees, contractors, vendors and charter schools, where the victim is a CPS student and/or a minor.

75.     Attached and hereforth incorporated as a whole into the facts of this Complaint, are the following:

    a.      Inspector General Report from 2017, attached as **EX 11.**

    b.      Significant Activity Report of October 24, 2017, attached as **Ex 12**

    c.      Inspector General Letter - Re: OIG Should Investigate Allegations of CPS Sex Crimes, of June 5, 2018 – **EX 13**

    d.      Inspector General Report from 2018, attached as **EX 14**

    e.      April 2019 Presentation to the Board of Education of the City of Chicago, OIG Investigations of Sexual Allegations, attached as **EX 15**

    f.      July 2019 Presentation to the Board of Education of the City of Chicago, OIG Investigations of Sexual Allegations, attached as **EX 16**.

    g.      Inspector General Report from 2019, attached as **EX 17**.

76.     According to the 2017 Inspector General Report, a review conducted by the Office of Inspector General for the Chicago Public Schools discovered that 163 former CPS employees with permanent "Do Not Hire" (DNH) designations in their CPS files were working at CPS charter and contract schools.

77.     According to the 2017 Inspector General Report, three employees found working at charter or contract schools during the 2016–17 school year were designated as DNHs by CPS for sexual abuse.

a. One of those employees was a former CPS elementary school teacher who was fired and classified as a DNH for sexually abusing two of his students at his home and inappropriately touching a third student during class. The OIG discovered that he was working at a charter school as a teacher in Chicago during the 2016–17 school year.

b. The second employee who was classified as a DNH for sexual abuse was fired by CPS after it was discovered that he had a sexual relationship with a 17-year-old student. During the 2016–17 school year, that former CPS employee was working in a charter school as a teacher. The charter and board already was aware that the employee had been arrested for criminal sexual assault because that was discovered during the criminal background check conducted when he was hired.

c. The third employee with a DNH designation because of sexual abuse resigned from CPS following allegations that he hugged a student and made explicit sexual advances towards the student. During the 2016–17 school year, that former employee was working in a classroom setting at a charter school. In the Board's response, it advised the OIG that CPS contacted the charter and learned that the employee had been released by the school in 2016.

78.   According to the 2017 Inspector General Report, 22 former CPS employees who were designated as DNHs due to improper corporal punishment or physical abuse of students were working in charter or contract schools during the 2016–17 school year.

79.   According to the 2017 Inspector General Report, Defendant Board advised the OIG it is working to establish a broader method by which charter and contract schools will be able to receive DNH information from CPS.

80.   According to the October 24, 2017 Significant Activity Report:

a. Former CPS employees with DNHs were found working for 33 different charter or contract operators. Four of those operators employed 11 to 27 individuals with DNHs, 11 of the operators employed 4 to 8 of those individuals, and 18 employed 1 to 3.

b.    Five percent of all CPS employees who received DNH designations in the last five years were found to be working in charter or contract schools.

c.    The charter and contract schools apparently did not know that they were hiring employees who had been given DNH designations by CPS, because there was no system in place by which charter or contract schools could learn whether their employees or prospective employees had received those designations.

81.    Allowing DNH designated Staff related to sexual assault and sexual abuse posed a threat to students.

82.    According to Inspector General Letter - Re: OIG Should Investigate Allegations of CPS Sex Crimes, of June 5, 2018, CPS needs an independent team to investigate CPS sexual abuse allegations.

83.    According to Inspector General Letter - Re: OIG Should Investigate Allegations of CPS Sex Crimes, of June 5, 2018, the Inspector General recommended that the Chicago Board of Education adopt the New York City practice cited in the *Tribune,* in which that school district's inspector general - rather than its law department - conducts sex crime investigations, to eliminate the inherent conflict-of-interest problems posed under the current CPS system.

84.    According to Inspector General Letter - Re: OIG Should Investigate Allegations of CPS Sex Crimes, of June 5, 2018, the *Tribune* report is rife with instances of CPS's competing interests and lack of follow-through in sex abuse cases - situations that would be eliminated by the OIG assuming investigative responsibility for such cases. Examples included the following:

a.    At one high school, the CPS law department both investigated a sexual assault allegation against a coach and then drew on those investigative files to defend the district against a civil suit by the coach's victim.

b.    If the OIG had the responsibility for investigating sex crimes at CPS, it may well have recommended disciplinary action against the elementary magnet school principal who grilled a sex victim's mother instead of, apparently, calling the police. Indeed, any CPS school administrators who muddy the integrity of OIG or law enforcement sex investigations by trying to conduct their own probes likely would be recommended for discipline by the OIG.

c.    The *Tribune* found no evidence that CPS employees who kept quiet about sex abuse allegations were ever criminally charged. If sex crime allegations were reported to and investigated by the OIG, the office would recommend action against employees who

19

ignored their duties as mandated reporters.

    d.    The *Tribune* found that the CPS law department sometimes "cuts confidential deals with problem educators to get them to resign." Making the OIG the primary investigator of sex crime allegations at CPS would ensure that, at a minimum, the OIG would sensitively - but publicly - report on such cases as appropriate.

85.    The 2018 Inspector General Report also reported another incident where a background check should have precluded a Staff hire:

An investigation determined that a teacher at an elementary school had a history of sexual overtures and improper fondling with at least one minor, and possibly more. The OIG initiated this case after one of the teacher's former students submitted a complaint to the OIG alleging that he was victimized by the teacher approximately 30 years ago, when the teacher worked for another school district. The former student reported to the OIG that, when he was 13 years old, the teacher improperly touched him in the groin area while they were in a classroom. He also informed the OIG that, years later, the teacher was prosecuted for criminal sexual abuse of a different minor.

The OIG subsequently found that in 2000, before the teacher worked for CPS, he was arrested for indecent solicitation of a child, who was not a CPS student. At that time, he worked for another school district. He was arrested after law enforcement discovered that he had an improper relationship with a 16-year-old boy whom he met in an internet chat room. According to police reports, the teacher and boy had discussed sexual subject matter over email and, on at least one occasion, had met at the mall and in the teacher's car, which, at the very least, involved the teacher rubbing the boy's arm, leg and ear. The teacher was arrested when he arrived for a subsequent planned meeting with the boy.

In 2000, the teacher was charged with two Class 3 felonies: (1) indecent solicitation of a child, 720 5/11-6(a)(2), and (2) aggravated criminal sexual abuse involving a victim between 13 and 16 years of age, 720 ILCS 5/12-16(d). However, he pleaded guilty to, and was only convicted of, Class A misdemeanor battery, 720 ILCS 5/12- 3(a)(2). He was sentenced to 24 months of probation and 100 hours of public service work and was ordered to pay $2,027 in fines and costs. He was also ordered to have no contact with the victim and to complete counseling. He forfeited his computer that was seized by police, and he was ordered not to use the internet, unless such use related to his employment. He was not ordered to register as a sex offender.

The OIG further found that in 2003, shortly after his period of probation concluded, he was hired by CPS as an elementary school teacher. He disclosed his conviction for misdemeanor battery — which is not an enumerated offense — on his CPS application and underwent a criminal background check, but the background check did not reveal any criminal convictions, not even the conviction that he disclosed.

As part of this investigation, the OIG interviewed the teacher, who confirmed much of the information in the police reports about his arrest and his improper involvement with the boy. He acknowledged that, when he was arrested after Office of Inspector General Chicago Board of Education 2018 Annual Report – 46 – arriving for one of his planned meetings with the boy, he was anticipating the possibility that he and the boy might engage in a sex act.

During this investigation, the OIG informed the CPS Law Department of the nature of this case and

the evidence obtained, and CPS immediately placed the teacher on a paid leave of absence. After the OIG concluded its investigation and reported this case to the Board, the Board notified ISBE of this matter, and the teacher resigned and voluntarily surrendered his teaching license. His license is now treated by ISBE as revoked. The Board also placed a Do Not Hire (DNH) designation in the teacher's personnel file

86.　　Charter Schools like Legal Prep were underreporting incidents of sexual abuse and inappropriate conduct, which were defined by April 2019 Presentation to the Board of Education of the City of Chicago, OIG Investigations of Sexual Allegations to include penetration, groping, fondling, unambiguously sexual comments to student, sexual text messages or emails, touching of a possible (not obvious) sexual nature, and "creepy" behavior.

87.　　According to April 2019 Presentation to the Board of Education of the City of Chicago, OIG Investigations of Sexual Allegations:

   a. "charter reporting rates are 3.41 times lower per 100,000 students than district reporting rates, and if charters reported at the district rate, we would have 51 charter cases rather than 15."

   b. "This suggests that incidents at charter schools may be underreported."

   c. "Under-reporting would prevent students from receiving needed supports and either prevent an independent, professional investigation from taking place or prevent investigation entirely."

   d. "OSP is expanding their training this spring to include charters, which will hopefully increase awareness and compliance."

88.　　According to the July 2019 Presentation to the Board of Education of the City of Chicago, OIG Investigations of Sexual Allegations, there was 96 total sexual allegations case reported from October through November 2018.

89.　　The July 2019 Presentation to the Board of Education of the City of Chicago, OIG Investigations of Sexual Allegations provided "that as of the OG's last public presentation in April 2019, there were only 15

cases involving charter schools. That number has doubled to 31 in the last 3 months."

90.     According to the 2019 Inspector General Report, on June 27, 2018, passed a resolution (18-0627-RS4) granting the OIG specific authority to investigate sexual abuse allegations.

    a.      In that resolution, the Board committed to dedicating the resources necessary for the OIG to assemble a team devoted to investigating sexual misconduct.

    b.      The OIG began forming the Sexual Allegations Unit, and that unit commenced operations on October 1, 2018, with a commitment to investigating every case involving allegations that could be construed as sexual or potentially sexual.

    c.      The OIG SAU has a very high volume of cases, opening nearly 500 investigations during Fiscal Year 2019.

**ILLINOIS SCHOOL CODE**

91.     The Illinois School Code, _105 ILCS 5/22-85_, provides:

    The General Assembly finds that:
    **(1)** investigation of a child regarding an incident of sexual abuse can induce significant trauma for the child;
    **(2)** it is desirable to prevent multiple interviews of a child at a school; and
    **(3)** it is important to recognize the role of Children's Advocacy Centers in conducting developmentally appropriate investigations.

92.     Under the Illinois School Code: "Alleged incident of sexual abuse" is limited to an incident of sexual abuse of a child that is alleged to have been perpetrated by school personnel, including a school vendor or volunteer, that occurred (i) on school grounds or during a school activity or (ii) outside of school grounds or not during a school activity. _105 ILCS 5/22-85_

93.     Defendants and its Staff are mandatory reporters under the Illinois School Code, which requires:

    If a mandated reporter within a school has knowledge of an alleged incident of sexual abuse, the reporter must call the Department of Children and Family Services' hotline established under Section 7.6 of the Abused and Neglected Child Reporting Act [325 ILCS 5/7.6] immediately after obtaining the minimal information necessary to make a report, including the names of the affected parties and the allegations. The State Board of Education must make available materials detailing the information that is necessary to enable notification to the Department of Children and Family Services of an alleged incident of sexual abuse. Each school must ensure that mandated reporters review the State Board of Education's materials and materials developed by the Department of

22

Children and Family Services and distributed in the school building under Section 7 of the Abused and Neglected Child Reporting Act [325 ILCS 5/7] at least once annually. 105 ILCS 5/22-85

94.     Defendants and their staff may not interview the students on the alleged sexual misconduct, and must cooperate in the investigation:

> After an alleged incident of sexual abuse is accepted for investigation by the Department of Children and Family Services or a law enforcement agency and while the criminal and child abuse investigations related to that alleged incident are being conducted by the local multidisciplinary team, the school relevant to the alleged incident of sexual abuse must comply with both of the following:
>
> > **(1)** It may not interview the alleged victim regarding details of the alleged incident of sexual abuse until after the completion of the forensic interview of that victim is conducted at a Children's Advocacy Center. This paragraph does not prohibit a school from requesting information from the alleged victim or his or her parent or guardian to ensure the safety and well-being of the alleged victim at school during an investigation.
> >
> > **(2)** If asked by a law enforcement agency or an investigator of the Department of Children and Family Services who is conducting the investigation, it must inform those individuals of any evidence the school has gathered pertaining to an alleged incident of sexual abuse, as permissible by federal or State law. 105 ILCS 5/22-85

95.     Defendant Board of Education and Legal Prep must comply with _105 ILCS 5/34-18.61_, in review on all existing policies and procedures concerning sexual abuse investigations: "Every 2 years, the school district must review all existing policies and procedures concerning sexual abuse investigations at schools to ensure consistency with Section 22-85 [105 ILCS 5/22-85]."

**COUNT I**
**TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 BOARD OF EDUCATION OF THE CITY OF CHICAGO ("BOARD") AND LEGAL PREP CHARTER ACADEMIES**

96.     Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-95 herein.

97.     Title IX of the Education Amendments of 1972 ("Title IX") states that:

> No person in the United States shall, on the basis of sex, be excluded from participation, in be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.S.C. § 1681, _et seq._

98.     Plaintiff J.R. belongs to a protected group under Title IX.

99.     Defendants Board and Legal Prep Charter Academies provide educational institutions with

programs and activities and are recipients of federal funds for educational programs and activities as defined under Title IX.

100.    As described more fully above, J.R. was subjected to discrimination and harassment by Defendant Helaire-Jones where Defendant Helaire-Jones forced J.R. to engage in various sexual acts.

101.    The discrimination and harassment suffered by J.R. was based on sex as described above.

102.    Defendants Board and Legal Prep Charter Academies knowingly permitted J.R. to be discriminated against and harassed based on membership in a certain class of individuals.

103.    Defendants Board and Legal Prep Charter Academies treated J.R. differently than other similarly situated individuals not belonging to the class of J.R.

104.    The discrimination and harassment in the form of repeated acts of sexual penetration and sexual contact were so severe and pervasive that it altered the conditions of J.R.'s education.

105.    Defendants Board and Legal Prep Charter Academies had actual direct notice of Defendant Helaire-Jones's improper sexual misconduct, as alleged in paragraphs 12-95,:

  a.    Board running a background check on December 26, 2017.

  b.    Legal Prep had notice of the background check, and/or in the alternative, were bound to not hire or allow any contact with students.

  c.    The Board and Legal Prep were aware of the reputation of Defendant Jamel Helaire-Jones and his inappropriate sexual conduct with students.

  d.    Students reported Defendant Jamel Helaire-Jones inappropriate sexual conduct with students to the Board and Legal Prep's Staff.

106.    Defendants were deliberately indifferent to his misconduct, as alleged in paragraphs 12-95, above, for:

  a.    Allowing Defendant Jamel Helaire-Jones contact with students both prior to and after the background check.

  b.    Allowing Defendant Jamel Helaire-Jones contact with students after allegations of

24

misconduct were reported.

    c.    Not immediately reporting the allegations of sexual misconduct to DCFS, the police and the Inspector General.

    d.    Failing to appropriately train and implement policies to protect students from sexual misconduct by persons in authority.

107.    Defendant Board and Defendant Legal Prep Charter Academies, including their district, network, and school administrators, had knowledge of Defendant Helaire-Jones's misconduct and possessed the authority to institute corrective measures; however, Defendants failed to take corrective measures to stop harm against J.R.

108.    As a direct and proximate result of the conduct of Defendant Board and Defendant Legal Prep Charter Academies, Plaintiff J.R. suffered harm.

    WHEREFORE, Plaintiff respectfully requests:

    a.    Compensatory and punitive damages in an amount to be determined at trial;

    b.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

    c.    Such other relief as the Court may deem just or equitable.

**COUNT II**
**42 U.S.C. § 1983 – DUE PROCESS VIOLATION - DELIBERATE INDIFFERENCE OF THE BOARD OF EDUCATION OF THE CITY OF CHICAGO ("BOARD") AND LEGAL PREP CHARTER ACADEMIES**

109.    Plaintiff re-alleges and incorporates each of the paragraphs of this Complaint contained in paragraphs 1-95 as if restated herein.

110.    Under the Fourteenth Amendment to the U.S. Constitution, Plaintiff J.R. possesses a right to bodily integrity.

111.    Defendant Legal Prep Charter Academies acted under color of law insofar as it engaged in conduct that is fairly attributable to the state because Defendant Legal Prep Charter Academies was jointly engaged with or controlled by Defendant Board and was delegated a public function in providing public education

in Chicago, Illinois.

112.    Defendant Legal Prep is governed by Chicago Public Schools and a independent Board of Directors. http://www.legalprep.org/supporting-boards.html

113.    The Chicago Board of Education, founded in 1840, is responsible for the governance, organizational and financial oversight of Chicago Public Schools (CPS) including its charter schools.

114.    The Chicago Board of Education establishes policies, standards, goals and initiatives at its Charter Schools to ensure accountability and provide a high quality, world-class education for the 21st century that prepares our students for success in college, work and life.

115.    Legal Prep Charter Academies, Inc., is established under the Charter Schools Law, 105 ILCS 5/27 A-l *et seq.,* as amended (the "Charter Schools Law" effective since 4/10/1996), which provides:

    a.    A charter school "shall be organized and operated as a nonprofit corporation or other discrete, legal, nonprofit entity authorized under the laws of the State of Illinois." 105 ILL. COMP. STAT. 5/27A-5(a).

    b.    The governing body of a charter school is subject to the same disclosure requirements applicable to other government entities in Illinois. *See* 105 ILL. COMP. STAT. 5/27A-5(c).

116.    Defendant Board of Education of the City of Chicago in 2017 and 2018 oversaw and operated Defendant Legal Prep, including but not limited to requiring Legal Prep to provide evidence to the Board, to ensure:

    a.    Compliance with all Federal and State laws and constitutional provisions prohibiting discrimination on the basis of disability, race, creed, color, gender, national origin, religion, ancestry, marital status or need for special educational services pursuant to 105 ILCS 5/27 A-4(a);

    b.    Compliance with the Freedom of Information Act and Open Meetings Ad pursuant to 105 ILCS 5/27A-5(c);

26

    c.      Compliance with all applicable health and safety requirements applicable to public schools under the laws of the State of Illinois pursuant to 105 ILCS 5/27 A-5( d);

    d.      Compliance with all Federal and State laws and rules applicable to public schools that pertain to special education and the instruction of English language learners pursuant to 105 ILCS 5/27 A-5(g);

    e.      Compliance with all enumerated State laws and regulations applicable to Charter Schools in accordance with 105 ILCS 5/27 A-S(g);

117.    Legal Prep's status as a state actor is also evidenced by the fact that Defendant Board of Education of the City of Chicago also made payments to City Pension Fund for Legal Prep's Staff as follows:

> The Board shall make payments directly to the Public School Teachers' Pension and Retirement Fund of Chicago ("Chicago Teachers Pension Fund") for the employer's pension liability on behalf of any education, administrative or other staff member employed at the Charter School (whether by the Charter School itself or one of its subcontractors) who is certified under the law governing certification of teachers.

118.    Defendants Board and Legal Prep Charter Academies maintained a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law where:

    a.      Defendants permitted their employees, such as Defendant Helaire-Jones, to work with students without conducting adequate background checks.

    b.      Defendants failed to train and require their Staff to perform and/or evaluate background checks in order to disqualify Defendant Helaire-Jones from employment with Defendants Board and Legal Prep Charter Academies.

119.    Due to Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to the safety of the students and to the enforcement of performing background screening on their employees, Defendants Board and Legal Prep Charter Academies, retained Defendant Helaire-Jones to work with students, including J.R.

120.    Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to the widespread practice and custom of improper and inadequate background checks and enforcement

of these background checks created the plainly obviously consequence of abuse by Defendant Helaire-Jones upon J.R.

121.    Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to the widespread practice and custom of improper sexual contact and harassment between CPS employees and their students created the plainly obviously consequence of abuse and harrassment by Defendant Helaire-Jones upon J.R.

122.    Based on Defendant Board's and Defendant Legal Prep Charter Academies' widespread practices and customs, Defendants Board and Legal Prep Charter Academies denied J.R. due process right to bodily integrity under the law as protected by the Fourteenth Amendment to the U.S. Constitution.

123.    Defendant Board's and Defendant Legal Prep Charter Academies' widespread practices and customs unlawfully denied J.R. due process of law in a manner that shocks the conscience.

WHEREFORE, Plaintiff respectfully requests:

a.    Compensatory and punitive damages in an amount to be determined at trial;

b.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

c.    Such other relief as the Court may deem just or equitable.

**COUNT III**
**42 U.S.C. § 1983 - DUE PROCESS VIOLATION - "STATE CREATED DANGER" BOARD OF EDUCATION OF THE CITY OF CHICAGO ("BOARD") AND LEGAL PREP CHARTER ACADEMIES**

124.    Plaintiff re-alleges and incorporates each of the paragraphs of this Complaint contained in paragraphs 1-95 as if restated herein.

125.    Under the Fourteenth Amendment to the U.S. Constitution, Plaintiff J.R. possesses a right to bodily integrity.

126.    Defendant Legal Prep Charter Academies acted under color of law insofar as it engaged in conduct that is attributable to the state because Defendant Legal Prep Charter Academies was jointly engaged with or controlled by Defendant Board and was delegated a public function in providing public education in

28

Chicago, Illinois.

    a.    At all times, Defendant Board had and has absolute authority and responsibility to accept, reject, suspend, discipline and terminate any Staff to be hired or that is hired at Legal Prep, including but not limited to Defendant Helaire-Jones.

    b.    Between October 15, 2017 and November 13, 2017, Defendant Board received notice, pursuant to paragraph 5, subpart (e) of the Renewal of Charter and Charter School Agreement between the Board of Education of the City of Chicago and Legal Prep Charter Academies, Inc. , bate-stamped as BOE 0000039-103 – **EX 3** (not filed as confidential), that Defendant Helaire-Jones was on Staff at Legal Prep and had a duty to remove him, knowing that he was ineligible to work with students

    c.    Beginning November 14, 2017, Defendant Board received notice, pursuant to paragraph 5, subpart (f) of the Renewal of Charter and Charter School Agreement between the Board of Education of the City of Chicago and Legal Prep Charter Academies, Inc. , bate-stamped as BOE 0000039-103 – **EX 3** (not filed as confidential), that Defendant Helaire-Jones was hired and/or on Staff at Legal Prep and had a duty to remove him, knowing that he was ineligible to work with students,

127.    Defendant Legal Prep is governed by Chicago Public Schools and an independent Board of Directors. http://www.legalprep.org/supporting-boards.html

128.    The Chicago Board of Education, founded in 1840, is responsible for the governance, organizational and financial oversight of Chicago Public Schools (CPS) including its charter schools.

129.    The Chicago Board of Education establishes policies, standards, goals and initiatives at its Charter Schools to ensure accountability and provide a high quality, world-class education for the 21st century that prepares our students for success in college, work and life.

130.    Legal Prep Charter Academies, Inc., is established under the Charter Schools Law, 105 ILCS 5/27 A-l *et seq.,* as amended (the "Charter Schools Law" effective since 4/10/1996), which provides:

    a.      A charter school "shall be organized and operated as a nonprofit corporation or other discrete, legal, nonprofit entity authorized under the laws of the State of Illinois." 105 ILL. COMP. STAT. 5/27A-5(a).

    b.      The governing body of a charter school is subject to the same disclosure requirements applicable to other government entities in Illinois. *See* 105 ILL. COMP. STAT. 5/27A-5(c).

131.    Defendant Board of Education of the City of Chicago in 2017 and 2018 oversaw and operated Defendant Legal Prep, including but not limited to requiring Legal Prep to provide evidence to the Board, to ensure:

    a.      Compliance with all Federal and State laws and constitutional provisions prohibiting discrimination on the basis of disability, race, creed, color, gender, national origin, religion, ancestry, marital status or need for special educational services pursuant to 105 ILCS 5/27 A-4(a);

    b.      Compliance with the Freedom of Information Act and Open Meetings Ad pursuant to 105 ILCS 5/27A-5(c);

    c.      Compliance with all applicable health and safety requirements applicable to public schools under the laws of the State of Illinois pursuant to 105 ILCS 5/27 A-5( d);

    d.      Compliance with all Federal and State laws and rules applicable to public schools that pertain to special education and the instruction of English language learners pursuant to 105 ILCS 5/27 A-5(g);

    e.      Compliance with all enumerated State laws and regulations applicable to Charter Schools in accordance with 105 ILCS 5/27 A-S(g);

132.    Legal Prep's status as a state actor is also evidenced by the fact that Defendant Board of Education of the City of Chicago also made payments to City Pension Fund for Legal Prep's Staff as follows:

    The Board shall make payments directly to the Public School Teachers' Pension and

Retirement Fund of Chicago ("Chicago Teachers Pension Fund") for the employer's pension liability on behalf of any education, administrative or other staff member employed at the Charter School (whether by the Charter School itself or one of its subcontractors) who is certified under the law governing certification of teachers.

132. Defendants Board and Legal Prep Charter Academies maintained a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law where these Defendants permitted their employees, such as Defendant Helaire-Jones, to work with students without conducting background checks.

133. Due to Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to the safety of the students and to the enforcement of performing background screening on their employees, Defendants Board and Legal Prep Charter Academies retained Defendant Helaire-Jones to work with students, including J.R.

134. Defendants Board and Legal Prep Charter Academies maintained a widespread practice and custom of improper sexual contact between Staff and their students.

135. Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to the widespread practice and custom of improper sexual contact between CPS employees and their students created the plainly obviously consequence of abuse by Defendant Helaire-Jones upon J.R.

136. Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to its' Staff's improper sexual contact with students created a specific and identifiable threat to the students working with Defendant Helaire-Jones.

137. Defendant Board's and Defendant Legal Prep Charter Academies' deliberate indifference to its' Staff improper sexual contact with students created a heightened danger because Defendants Board and Legal Prep Charter Academies effectively encouraged Defendant Helaire-Jones to believe that he could engage in improper and unauthorized sexual contact with students without fear of reprisal or discipline.

138. Defendant Board's and Defendant Legal Prep Charter Academies' acted with deliberate indifference implied to Defendant Helaire-Jones that his actions were permissible, and thus, the acts of Defendants Board and Legal Prep Charter Academies affirmatively increased the risk of danger to the

students at Legal Prep, including J.R.

    a. By informing Defendant Helaire-Jones of the allegations made against him and allowing him to approach the student about those allegations and to intimidate that student.

    b. By conducting an investigation of the sexual misconduct of Defendant Helaire-Jones, and finding the allegations unsubstantiated on November 8, 2018.

    c. By making the decision not to report the allegations of sexual misconduct of Defendant Helaire-Jones appropriately.

    d. By permitting Prospective Staff Defendant Helaire-Jones to have contact with students (i.e., via text messages, lives chats, emails, telephone, in person, or through any other means) prior to Legal Prep receiving the results of the Defendant Helaire-Jones's Background Checks and the Board's adjudication.

    e. By failing to timely conduct a background check of Defendant Helaire-Jones, including looking into the prior arrests and convictions.

    f. By continuing to allow Defendant Helaire-Jones to have contact with students (i.e., via text messages, lives chats, emails, telephone, in person, or through any other means) after the Board received the background check on December 25, 2017, and determined that he was not eligible for hire by CPS on February 15, 2018.

    g. By not appropriately training Staff on reporting of sexual misconduct allegations.

139. Through their actions, Defendants Board and Legal Prep Charter Academies placed J.R. in a heightened danger that she would not have otherwise faced.

140. Defendant Board's and Defendant Legal Prep Charter Academies' repeated and sustained acts of permitting improper sexual abuse between employees and students constituted prior assurances rising to the level of an affirmative condoning of sexual abuse by Defendant Helaire-Jones.

141. At all relevant times herein, J.R. was a foreseeable victim and a member of a discrete class of persons that was exposed to the actions of Defendant Helaire-Jones.

142.    Defendants Board and Legal Prep Charter Academies effectively encouraged Defendant Helaire-Jones that he will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the lives of the students at Legal Prep, including J.R.

143.    Defendant Board's and Defendant Legal Prep Charter Academies' conduct unlawfully denied J.R. due process of law in a manner that shocks the conscience.

WHEREFORE, Plaintiff respectfully requests:

a.      Compensatory and punitive damages in an amount to be determined at trial;

b.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

c.      Such other relief as the Court may deem just or equitable.

## COUNT IV
## 42 U.S.C. § 1983 - DUE PROCESS VIOLATION JAMEL M. HELAIRE-JONES

144.    Plaintiff re-alleges and incorporates each of the paragraphs of this Complaint contained in paragraphs 1-95 as if restated herein.

145.    Under the Fourteenth Amendment to the U.S. Constitution, Plaintiff J.R. possesses a right to bodily integrity.

146.    Defendant Helaire-Jones's unauthorized and non-consensual sexual contact with J.R. and his improper sexual abuse and assault with J.R. denied J.R. due process under the law as protected by the Fourteenth Amendment to the U.S. Constitution.

147.    Defendant Helaire-Jones's improper sexual abuse and assault with J.R.  unlawfully denied J.R. due process of law in a manner that shocks the conscience.

148.    At all times relevant herein, Defendant Helaire-Jones acted under color of law.

149.    As a direct and proximate result of the foregoing conduct of Defendant Helaire- Jones, Plaintiff J.R. suffered harm.

WHEREFORE, Plaintiff respectfully requests:

a.      Compensatory and punitive damages in an amount to be determined at trial;

33

b.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

c.    Such other relief as the Court may deem just or equitable.

**COUNT V**
**NEGLIGENCE**
**LEGAL PREP CHARTER ACADEMIES**

150.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-95 herein.

151.    Legal Prep Charter Academies provides education to students in the City of Chicago.

152.    Legal Prep Charter Academies' mission is:

Legal Prep Charter Academy is a completely free, open-enrollment public high school that was founded in 2012 in the West Garfield Park neighborhood of Chicago. Legal Prep uses its unique law themed curriculum and culture of high expectations to cultivate compassion, self-motivation, and reflection in young adults who will be prepared to succeed at outstanding four-year colleges and universities.

153.    Sexual misconduct and abuse in school interferes with a students' ability to succeed at school and creates an inappropriate environment to learn.

154.    Defendant Legal Prep Charter Academies, by and through their agents and/or employees, knew or should have known that Defendant Helaire-Jones was grooming Plaintiff J.R. through his influence as dean/disciplinarian and basketball coach in order to commit sexual conduct upon her.

155.    Defendant Legal Prep Charter Academies, by and through its staff, agents and/or employees, had a duty to provide and appropriate learning environment for its students, and:

a.    To prevent its Staff from sexual abusing its students

b.    To report grooming and sexual contact between Defendant Helaire-Jones with Plaintiff J.R. and/or other students to appropriate law enforcement or DCFS as required by state law;

c.    To supervise or monitor Defendant Helaire-Jones in order prevent the improper grooming and sexual conduct with Plaintiff J.R. and/or other students;

d.    To not hired or retained Defendant Helaire-Jones where it knew or should have known of his criminal history and grooming of J.R. and/or other students;

e.    To reasonably direct, instruct, supervise, monitor, and train its agents, servants, and/or employees to ensure timely and proper reporting of grooming and sexual abuse, including grooming and abuse of Plaintiff J.R. and/or other students; and

34

      f.       To adequately conduct background checks on Defendant Helaire-Jones.

156.     Defendant Legal Prep Charter Academies, by and through its agents and/or employees, breached its duty and was negligent in the following ways:

    a.    Failed to provide an appropriate learning environment for its students.

    b.    Failed to prevent its Staff from sexual abusing its students.

    c.    Failed to report grooming and sexual contact between Defendant Helaire-Jones with Plaintiff J.R. and/or other students to appropriate law enforcement or DCFS as required by state law with utter indifference to or in conscious disregard for the safety of others;

    d.    Failed to monitor Defendant Helaire-Jones in order prevent the improper grooming and sexual conduct with Plaintiff J.R. and/or other students with utter indifference to or in conscious disregard for the safety of others;

    e.    Improperly retained Defendant Helaire-Jones where it knew or should have known of his criminal history and grooming of J.R. and/or other students with utter indifference to or in conscious disregard for the safety of others;

    f.    Failed to reasonably direct, instruct, supervise, monitor, and train its agents, servants, and/or employees to ensure timely and proper reporting of sexual abuse, including abuse of Plaintiff J.R. and/or other students with utter indifference to or in conscious disregard for the safety of others; and

    g.    Failed to adequately conduct background checks on Defendant Helaire-Jones with utter indifference to or in conscious disregard for the safety of others.

157.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions, Defendant Legal Prep Charter Academies breached its duty and caused harm to Plaintiff J.R.

    WHEREFORE, Plaintiff respectfully requests:

    a.    Compensatory damages in an amount to be determined at trial;

    b.    An award of reasonable costs and litigation expenses; and

    c.    Such other relief as the Court may deem just or equitable.

**COUNT VI**
**WILLFUL AND WANTON CONDUCT**
**BOARD OF EDUCATION OF THE CITY OF CHICAGO ("BOARD")**
**AND LEGAL PREP CHARTER ACADEMIES**

158.    Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-95 herein.

159.    This Count VI is brought pursuant to 745 ILCS 10/3-108(a) where Defendants' conduct was willful and wanton, which provides:

> (a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury **unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury**.

160.    This Count VI is also brought pursuant to 745 ILCS 10/3-108(b) where Defendants' conduct was willful and wanton, which provides:

> (b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property **unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury**.

161.    The Chicago Board of Education, founded in 1840, is responsible for the governance, organizational and financial oversight of Chicago Public Schools (CPS) and charter schools including Legal Prep Charter Academy, the third largest school district in the United States of America, who's mission statement is as follows:

> To set goals and standards and make policies that make a high quality public education system available to the children of Chicago. To oversee the operations of the Chicago Public Schools, guarantee their accountability to the goals and objectives set by the Board and ensure that its accomplishments meet the expectations of the citizens of Chicago.

162.    The Chicago Board of Education establishes policies, standards, goals and initiatives to ensure accountability and provide a high quality, world-class education for the 21st century that prepares students for success in college, work and life.

163.    Defendants provides education to students in the City of Chicago, through it staff.

164.    Defendants supervise the Staff at Legal Prep, through training its Staff and implementing policies.

165.    Legal Prep Charter Academies' mission is:

> Legal Prep Charter Academy is a completely free, open-enrollment public high school that was

founded in 2012 in the West Garfield Park neighborhood of Chicago. Legal Prep uses its unique law themed curriculum and culture of high expectations to cultivate compassion, self-motivation, and reflection in young adults who will be prepared to succeed at outstanding four-year colleges and universities.

166. Sexual misconduct and abuse in school interferes with a students' ability to succeed at school, and creates an inappropriate environment to learn.

167. Defendants Board of Education and Legal Prep Charter Academies, by and through their staff, agents and/or employees, knew or should have known that Defendant Helaire-Jones was grooming Plaintiff J.R. through his influence as dean/disciplinarian and basketball coach in order to commit sexual conduct upon her.

168. Defendants had a duty to provide and appropriate learning environment for its students by appropriately supervising its Staff:

    a.     To prevent its Staff from sexual abusing its students.

    b.     To report grooming and sexual contact between Defendant Helaire-Jones with Plaintiff J.R. and/or other students to appropriate law enforcement or DCFS as required by state law;

    c.     To supervise or monitor Defendant Helaire-Jones in order prevent the improper grooming and sexual conduct with Plaintiff J.R. and/or other students;

    d.     To not hired or retained Defendant Helaire-Jones where it knew or should have known of his criminal history and grooming of J.R. and/or other students;

    e.     To reasonably direct, instruct, supervise, monitor, and train its agents, servants, and/or employees to ensure timely and proper reporting of grooming and sexual abuse, including grooming and abuse of Plaintiff J.R. and/or other students; and

    f.     To adequately conduct background checks on Defendant Helaire-Jones.

169. Defendants Board and Legal Prep Charter Academies were willful and wanton in the supervising of its Staff, when Defendants:

    a.     Failed to provide and appropriate learning environment for its students.

    b.     Failed to prevent its Staff from sexual abusing its students

    c.     Failed to report grooming and sexual contact between Defendant Helaire-Jones with Plaintiff J.R. and/or other students to appropriate law enforcement or DCFS as required by

state law with utter indifference to or in conscious disregard for the safety of others;

d. Failed to monitor Defendant Helaire-Jones in order prevent the improper grooming and sexual conduct with Plaintiff J.R. and/or other students with utter indifference to or in conscious disregard for the safety of others;

e. Improperly retained Defendant Helaire-Jones where it knew or should have known of his criminal history and grooming of J.R. and/or other students with utter indifference to or in conscious disregard for the safety of others;

f. Failed to reasonably direct, instruct, supervise, monitor, and train its agents, servants, and/or employees to ensure timely and proper reporting of sexual abuse, including abuse of Plaintiff J.R. and/or other students with utter indifference to or in conscious disregard for the safety of others; and

g. Failed to adequately conduct background checks on Defendant Helaire-Jones with utter indifference to or in conscious disregard for the safety of others.

170. Defendants Board's and Legal Prep Charter Academies' conduct was with reckless indifference or conscious disregard to the safety of J.R. and/or other students with utter indifference to or in conscious disregard for the safety of others.

171. As a direct and proximate result of one or more of the aforesaid willful and wanton acts and/or omissions, Defendants Board and Legal Prep Charter Academies caused harm to Plaintiff J.R. and/or other students.

WHEREFORE, Plaintiff respectfully requests:

a. Compensatory damages in an amount to be determined at trial;

b. An award of reasonable costs and litigation expenses; and

c. Such other relief as the Court may deem just or equitable.

## COUNT VII – ASSAULT AND BATTERY
## JAMEL M. HELAIRE-JONES

172. Plaintiff incorporates paragraphs 1-95, as though fully stated herein.

173. Defendant Helaire-Jones intentionally committed multiple voluntary and affirmative acts that resulted in the harmful or offensive touching to Plaintiff's body.

174. Jamel H. Helaire-Jones' physical contact was taken place without Plaintiff's consent.

38

175.    Jamel H. Helaire-Jones' intentionally and unlawfully attempted to inflict corporal injury to Plaintiff by force, or unlawful directed force, under circumstances that create a well-founded fear of imminent peril coupled with the apparent present ability to do so, if not prevented.

176.    Plaintiff was in reasonable fear of injury.

177.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries, including but not limited to severe emotional and psychological injuries.

WHEREFORE, Plaintiff respectfully requests:

    a.    Compensatory damages in an amount to be determined at trial;

    b.    An award of reasonable costs and litigation expenses; and

    c.    Such other relief as the Court may deem just or equitable.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## JAMEL M. HELAIRE-JONES

178.    Plaintiff incorporates paragraphs 1-95, as though fully stated herein.

179.    Defendant's conduct in the repeated rape and sexual assault of Plaintiff was so extreme and outrageous as to go beyond all possible bounds of decency.

180.    From August 2018 through November 2018, Plaintiff was repeatedly sexually assaulted and experienced severe fright, horror, grief, shame, humiliation, and worry.

181.    No reasonable person, especially a minor, could have endured the Defendant's conduct.

182.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries, including but not limited to severe emotional and psychological injuries.

WHEREFORE, Plaintiff respectfully requests:

    a.    Compensatory damages in an amount to be determined at trial;

    b.    An award of reasonable costs and litigation expenses; and

    c.    Such other relief as the Court may deem just or equitable.

## COUNT IX – FRAUDULENT CONCEALMENT
## BOARD OF EDUCATION OF THE CITY OF CHICAGO

183.     Plaintiff incorporates paragraphs 1-95, as though fully stated herein.

184.     Defendant Board of Education of the City of Chicago owed a fiduciary or confidential relationship toward the Minor Plaintiff J.R..

185.     Defendant having knowledge of the Jamel H. Helaire-Jones' sexual misconduct, created a special relationship between the parties and consequently bestowed upon Plaintiff the right to be protected.

186.     Defendant, by and through its agents, willfully and wantoningly and/or with reckless disregard fraudulently concealed Plaintiff's cause of action, as follows:

        a.   Knowingly and actively suppressed the truth with the intent to prevent inquiry or knowledge of the injury.

        b.   Knowingly failing to disclose when Defendant had a duty to speak with the intent to prevent inquiry or knowledge of the injury.

        c.   Conveyed  to the Plaintiff a knowing or intentional, material misrepresentation upon which the Plaintiff reasonably, and without knowledge, acted or relied.

187.    As a direct and proximate result of Defendant's fraudulent concealment, J.R. suffered injuries, including but not limited to severe emotional and psychological injuries.

    WHEREFORE, Plaintiff respectfully requests:

     a.      Compensatory damages in an amount to be determined at  trial;

     b.      An award of reasonable costs and litigation expenses; and

     c.      Such other relief as the Court may deem just or  equitable.

### COUNT X – FRAUDULENT CONCEALMENT
### LEGAL PREP CHARTER ACADEMIES

188.     Plaintiff incorporates paragraphs 1-95, as though fully stated herein.

189.     Defendant Legal Prep owed a fiduciary or confidential relationship toward the Minor Plaintiff J.R..

190.     Defendant having knowledge of the Jamel H. Helaire-Jones' sexual misconduct, created a special relationship between the parties and consequently bestowed upon Plaintiff the right to be protected.

191.    Defendant, by and through its agents, willfully and wantoningly and/or with reckless disregard fraudulently concealed Plaintiff's cause of action, as follows:

      a.    Knowingly and actively suppressed the truth with the intent to prevent inquiry or knowledge of the injury.

      b.    Knowingly failing to disclose when Defendant had a duty to speak with the intent to prevent inquiry or knowledge of the injury.

      c.    Conveyed to the Plaintiff a knowing or intentional, material misrepresentation upon which the Plaintiff reasonably, and without knowledge, acted or relied.

192.    As a direct and proximate result of Defendant's fraudulent concealment, J.R. suffered injuries, including but not limited to severe emotional and psychological injuries.

WHEREFORE, Plaintiff respectfully requests:

      a.    Compensatory damages in an amount to be determined at trial;

      b.    An award of reasonable costs and litigation expenses; and

      c.    Such other relief as the Court may deem just or equitable.

## COUNT XI – ILLINOIS GENDER VIOLENCE ACT
## JAMEL M. HELAIRE-JONES

193.    Plaintiff incorporates paragraphs 1-95, as though fully stated herein.

194.    This allegation is made pursuant to the Gender Violence Act, 740 ILCS 82, et seq.

195.    As described more fully above, the conduct of the Defendant toward J.R., a female, constituted a physical intrusion of a sexual nature under coercive conditions. The Defendant's actions constituted unjustified and offensive physical contact. Defendant's conduct proximately caused the Plaintiff injuries.

196.    The misconduct described in this Count was undertaken with malice, was willful and wanton, was recklessly indifferent to the rights of others, and was objectively unreasonable

197.    The misconduct described in this Count was undertaken by the Defendant Jamel M. Helaire-Jones within the scope of his employment and under color of law such that his employer, Board of Education of

the City of Chicago and/or Legal Prep Charter Academies, is liable for his actions.

198.    As a direct and proximate result of Defendant's actions, J.R., a female, suffered injuries, including but not limited to severe emotional and psychological injuries.

WHEREFORE, Plaintiff respectfully requests:

a.    Compensatory damages in an amount to be determined at trial;

b.    An award of reasonable costs and litigation expenses; and

c.    Such other relief as the Court may deem just or equitable.

### COUNT XII – ILLINOIS GENDER VIOLENCE ACT
### BOARD OF EDUCATION OF CITY OF CHICAGO

199.    Plaintiff incorporates paragraphs 1-95, as though fully stated herein.

200.    This allegation is made pursuant to the Gender Violence Act, 740 ILCS 82, et seq.

201.    Defendant Jamel M. Helaire-Jones, at all times pertinent hereto, was an employee and/or agent of Defendants Board of Education of the City of Chicago and/or Legal Prep Charter Academies., to be the dean/disciplinarian and girls' basketball coach at Legal Prep Charter Academy, where J.R., a female, was a student. .

202.    At all times relevant herein, Defendant, knew and/or should have known of Jamel M. Helaire-Jones' abusive behavior in violation of the contractual duties under the contract, and/or history of violence and/or excessive force and discriminatory conduct.

203.    As described more fully above, the conduct of the Defendant toward J.R., a female, constituted a physical intrusion of a sexual nature under coercive conditions. The Defendant's actions constituted unjustified and offensive physical contact. Defendant's conduct proximately caused the Plaintiff injuries.

204.    The misconduct described in this Count was undertaken with malice, was willful and wanton, was recklessly indifferent to the rights of others, and was objectively unreasonable.

205.    The misconduct described in this Count was undertaken by the Defendant Jamel M. Helaire-Jones within the scope of his employment and under color of law such that his employer, Board of Education of

the City of Chicago and/or Legal Prep Charter Academies, is liable for his actions.

206.    As a direct and proximate result of Defendant's actions, J.R., a female, suffered injuries, including but not limited to severe emotional and psychological injuries.

WHEREFORE, Plaintiff respectfully requests:

a.    Compensatory damages in an amount to be determined at trial;

b.    An award of reasonable costs and litigation expenses; and

c.    Such other relief as the Court may deem just or equitable.

## COUNT XIII – ILLINOIS GENDER VIOLENCE ACT
## LEGAL PREP CHARTER ACADEMIES

207.    Plaintiff incorporates paragraphs 1-95, as though fully stated herein.

208.    This allegation is made pursuant to the Gender Violence Act, 740 ILCS 82, et seq.

209.    Defendant Jamel M. Helaire-Jones, at all times pertinent hereto, was an employee and/or agent of Defendants Board of Education of the City of Chicago and/or Legal Prep Charter Academies., to be the dean/disciplinarian and girls' basketball coach at Legal Prep Charter Academy, where J.R., a female, was a student. .

210.    At all times relevant herein, Defendant, knew and/or should have known of Jamel M. Helaire-Jones' abusive behavior in violation of the contractual duties under the contract, and/or history of violence and/or excessive force and discriminatory conduct.

211.    As described more fully above, the conduct of the Defendant toward J.R., a female, constituted a physical intrusion of a sexual nature under coercive conditions. The Defendant's actions constituted unjustified and offensive physical contact. Defendant's conduct proximately caused the Plaintiff injuries.

212.    The misconduct described in this Count was undertaken with malice, was willful and wanton, was recklessly indifferent to the rights of others, and was objectively unreasonable

213.    The misconduct described in this Count was undertaken by the Defendant Jamel M. Helaire-Jones within the scope of his employment and under color of law such that his employer, Board of Education of

the City of Chicago and/or Legal Prep Charter Academies, is liable for his actions.

214. As a direct and proximate result of Defendant's actions, J.R., a female, suffered injuries, including but not limited to severe emotional and psychological injuries.

WHEREFORE, Plaintiff respectfully requests:

a. Compensatory damages in an amount to be determined at trial;

b. An award of reasonable costs and litigation expenses; and

c. Such other relief as the Court may deem just or equitable.

## COUNT XIV – ILLINOIS HATE CRIME ACT, 720 ILCS 5/12-7.1
## BOARD OF EDUCATION OF THE CITY OF CHICAGO

215. That the Plaintiff restates and alleges the allegations contained with paragraphs 1-95 of this Complaint as set forth above and fully set forth herein. Plaintiff further states as follows:

216. Defendant Jamel M. Helaire-Jones, at all times pertinent hereto, was an employee and/or agent of Defendants Board of Education of the City of Chicago and/or Legal Prep Charter Academies., to be the dean/disciplinarian and girls' basketball coach at Legal Prep Charter Academy, where J.R., a female, was a student. .

217. At all times relevant herein, Defendant, knew and/or should have known of Jamel M. Helaire-Jones' abusive behavior in violation of the contractual duties under the contract, and/or history of violence and/or excessive force and discriminatory conduct.

218. Defendant Jamel M. Helaire-Jones committed an act of violence by assaulting and battering J.R., because of J.R. gender, as defined and in violation of Illinois Hate Crime Act, 720 ILCS 5/12.71.

219. As a direct and proximate result of the assault and battery by the Defendant, by its agents and employees working in the scope of their employment, Plaintiff incurred severe and permanent injuries including but not limited to physical injuries, emotional injury, loss of family and social experience, and embarrassment.

220. Plaintiff is entitled to attorney fees, costs and punitive damages pursuant to 720 ILCS 5/12-7.1.

WHEREFORE, Plaintiff respectfully requests:

44

a.    Compensatory damages in an amount to be determined at  trial;

b.    An award of reasonable costs and litigation expenses; and

c.    Such other relief as the Court may deem just or  equitable.

## COUNT XV – ILLINOIS HATE CRIME ACT, 720 ILCS 5/12-7.1
### LEGAL PREP CHARTER ACADEMIES

221.    That the Plaintiff restates and alleges the allegations contained with paragraphs 1-95 of this Complaint as set forth above and fully set forth herein. Plaintiff further states as follows:

222.    Defendant Jamel M. Helaire-Jones, at all times pertinent hereto, was an employee and/or agent of Defendants Board of Education of the City of Chicago and/or Legal Prep Charter Academies., to be the dean/disciplinarian and girls' basketball coach at Legal Prep Charter Academy, where J.R., a female,  was a student. .

223.    At all times relevant herein, Defendant, knew and/or should have known of Jamel M. Helaire-Jones' abusive behavior in violation of the contractual duties under the contract,  and/or history of violence and/or excessive force and discriminatory conduct.

224.    Defendant Jamel M. Helaire-Jones committed an act of violence by assaulting and battering J.R., because of J.R. gender, as defined and in violation of Illinois Hate Crime Act, 720 ILCS 5/12.71.

225.    As a direct and proximate result of the assault and battery by the Defendant, by its agents and employees working in the scope of their employment, Plaintiff incurred severe and permanent injuries including but not limited to physical injuries, emotional injury, loss of family and social experience, and embarrassment.

226.    Plaintiff is entitled to attorney fees, costs and punitive damages pursuant to 720 ILCS 5/12-7.1.

WHEREFORE, Plaintiff respectfully requests:

a.    Compensatory damages in an amount to be determined at  trial;

b.    An award of reasonable costs and litigation expenses; and

      c.      Such other relief as the Court may deem just or equitable.

## COUNT XVI – ILLINOIS HATE CRIME ACT, 720 ILCS 5/12-7.1
## JAMEL M. HELAIRE JONES

227.    That the Plaintiff restates and alleges the allegations contained with paragraphs 1-95 of this Complaint as set forth above and fully set forth herein. Plaintiff further states as follows:

228.    Defendant Jamel M. Helaire-Jones, at all times pertinent hereto, was an employee and/or agent of Defendants Board of Education of the City of Chicago and/or Legal Prep Charter Academies., to be the dean/disciplinarian and girls' basketball coach at Legal Prep Charter Academy, where J.R., a female, was a student. .

229.    Defendant Jamel M. Helaire-Jones committed an act of violence by assaulting and battering J.R., because of J.R. gender, as defined and in violation of Illinois Hate Crime Act, 720 ILCS 5/12.71.

230.    As a direct and proximate result of the assault and battery by the Defendant, by its agents and employees working in the scope of their employment, Plaintiff incurred severe and permanent injuries including but not limited to physical injuries, emotional injury, loss of family and social experience, and embarrassment.

231.    Plaintiff is entitled to attorney fees, costs and punitive damages pursuant to 720 ILCS 5/12-7.1.

    WHEREFORE, Plaintiff respectfully requests:

      a.      Compensatory damages in an amount to be determined at trial;

      b.      An award of reasonable costs and litigation expenses; and

      c.      Such other relief as the Court may deem just or equitable.

## JURY DEMAND

    Plaintiff respectfully demands a trial by jury.

                Respectfully submitted,

                DINIZULU LAW GROUP, LTD.

  s/Yao O. Dinizulu              

One of the Attorneys for the Plaintiff

Yao O. Dinizulu
DINIZULU LAW GROUP, LTD.
221 N. LaSalle, Suite 1100
Chicago, IL 60601
(312) 384-1920
Atty. No. 44300
dinizulu@dinizululawgroup.com
wright@dinizululawgroup.com
matta@dinizululawgroup.com


## CERTIFICATE OF SERVICE

I, Yao O. Dinizulu, hereby certify that on the 9th day of April 2021, the foregoing was sent via U.S. Mail to:

For the Defendant Board of Education of the City of Chicago:
Lindsey Erin Goldberg  (legoldberg@cps.edu)
Elizabeth Kathleen Barton  (ekbarton@cps.edu)
Board of Education of the City of Chicago
One North Dearborn Street
Law Department, Suite 900
Chicago, Illinois 60602
Tel: (773) 553-1700
Fax: (773) 553-1701

For the Defendant Legal Prep Charter Academies
John J. Moroney (john.moroney@francomoroney.com)
Randall W. Slade (randall.slade@francomoroney.com)
Anna Manfre (anna.manfre@francomoroney.com)
Franco Moroney Buenik, LLC
500 West Madison, Suite 2440
Chicago, IL 60661
312-469-1000
Atty No. 62148

Respectfully Submitted,

DINIZULU LAW GROUP, LTD.

By:     _/s/Yao O. Dinizulu_ (6242794)____
Attorney for Plaintiff
DINIZULU LAW GROUP, LTD.
221 N. LaSalle, Suite 1100
Chicago, IL 60601

Telephone: (312) 384-1920
Facsimile: (312) 384-1921
Dinizulu@dinizululawgroup.com
Wright@dinizululawgroup.com
Matta@dinizululawgroup.com