# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| J.R. | ) | |
|     Plaintiff, | ) | Case No. 1:19-cv-8145 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Board of Education of the City of Chicago, *et al.* | ) | Mag. Judge Sidney I. Schenkier |
|     Defendants. | ) | |

## BOARD'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant, Board of Education of the City of Chicago ("Board"), through its undersigned attorneys, pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) moves to dismiss the Plaintiff's Amended Complaint, ECF No. 69 ("Compl.") and states:

## INTRODUCTION

Plaintiff brings a sixteen count Amended Complaint against the Board, Legal Prep Charter Academies ("Legal Prep"), and Jamal M. Helaire-Jones ("Helaire-Jones"). Against the Board, Plaintiff claims the following violations: (1) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et. seq.* ("Title IX"); (2) Due Process Violation—Deliberate Indifference; (3) Due Process Violation—"State Created Danger," (4) Willful and Wanton Conduct; (5) Fraudulent Concealment; (6) Illinois Gender Violence Act ("IGVA"); and (7) Illinois Hate Crime Act ("IHCA").

The Board moves to dismiss all claims against it. Plaintiff's Title IX claim fails as a matter of law because the Board did not deny Plaintiff any services and Plaintiff does not allege a Board official who had authority to institute corrective measures had actual notice of Helaire-Jones' alleged misconduct. Plaintiff's due process claims cannot survive dismissal because Plaintiff cannot show the Board was deliberately indifferent or the Board's behavior "shocked the conscience." Plaintiff's willful and wanton conduct claim is not an independent cause of action, and the Board is, nevertheless, entitled to absolute immunity. Plaintiff's fraudulent concealment claim fails because she has not met the stringent pleading standard required for such a claim. Lastly, Plaintiff's claims under the IGVA

and IHCA both fail because she has not alleged the Board itself acted wrongfully or an employee committed wrongful acts within the scope of their employment. Accordingly, the Board asks this Court to dismiss all claims against the Board in their entirety and with prejudice.

## **RELEVANT FACTS**[1]

On April 9, 2021, Plaintiff filed an Amended Complaint alleging sexual misconduct by a non-Board employee, Helaire-Jones, a basketball coach at Legal Prep. ECF No. 69, ¶ 10. The Board and Legal Prep maintained an Agreement requiring the Board to conduct criminal history records checks on Legal Prep's employees. *Id.*, ¶ 25. The Agreement provided that after the Board receives results from the background checks it would share with Legal Prep if the Board would reject an applicant or terminate a current staff member, or if the Board would require additional information from the employee. Pl.'s Ex. 3, p.15. The Board performed a background check on Helaire-Jones and notified Legal Prep that he would be ineligible for hire by Chicago Public Schools. *Id.*, ¶¶ 32(c), 48. Legal Prep nevertheless chose to continue to employ Helaire-Jones. *See id.,* ¶ 32.

Plaintiff alleges Defendant Helaire-Jones initiated a sexual relationship with J.R., a Legal Prep student, on Legal Prep property. *Id.*, ¶¶ 35-40. Helaire-Jones was also accused of sexual misconduct with another Legal Prep student, which is the subject of a separate lawsuit. *Id.*, ¶ 41. Judge Robert Blakey dismissed the Board from this suit in its entirety on March 25, 2021. *Walker v. Board of Education*, No. 19 CV 4115, 2021 U.S. Dist. LEXIS 56292, at *21 (N.D. Ill. Mar. 25, 2021).

## **STANDARD OF REVIEW**

A complaint should be dismissed when "no relief could be granted under any set of facts." *Ledford v. Sullivan*, 105 F.3d 354, 357 (7th Cir. 1997). The court need not strain to find inferences favorable to a plaintiff and need not accept legal conclusions. *Nelson v. Monroe Reg. Med. Ctr.*, 925 F.2d

---

[1] The Board treats Plaintiff's pleaded allegations as true solely for the purpose of this Motion.

1555, 1599 (7th Cir. 1991). A plaintiff may "plead himself out of court" by alleging facts establishing a defendant is entitled to prevail. *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

## ARGUMENT

### I. THE BOARD DOES NOT CONTROL CHARTER SCHOOLS AND IS NOT LIABLE FOR LEGAL PREP'S ACTIONS.

An overarching initial matter here is the legally and factually misinformed allegation that the Board governs or controls Legal Prep and its employees. *See* Compl., ¶¶ 14-15, 19, 26, 28-29, 33, 42, 66-69. To be sure, the relationship between the Board and Legal Prep and other charter schools is complex, governed by contract and Illinois law. Charters are connected to the Board in important ways including funding, licensing, and background checks. *See* 105 ILCS 5/27A-1 *et seq.*; Pl.'s Ex. 4, pp. 1-2. However this emphatically **does not** mean the Board controls hiring, firing, and other personnel decisions for charter school staff. *See generally Walker*, 2021 U.S. Dist. LEXIS 56292.

Attempting to wrangle the Board into her Complaint, Plaintiff obfuscates this relationship. Legal Prep is first and foremost "an independent public school established under the Charter Schools Law." Pl.'s Ex. 2, p. 1; Pl.'s Ex. 3, p. 4. Legal Prep publishes its own Staff Handbook, including granting Legal Prep the authority to terminate an employee's employment at any time, with or without cause, and without notice. Pl.'s Ex. 1, pp. 3, 17. The Staff Handbook further states Legal Prep sets the hours, work schedules, salaries, paid days off, standards of conduct, and disciplinary procedures for its employees. Pl's Ex. 1, p. 7-9, 17-18. Neither the Charter Agreement between the Board and Legal Prep (the "Agreement") nor the Staff Handbook grants the Board authority to make or impact Legal Prep employment decisions. *See generally*, Pl's Ex. 1-3. Unsurprisingly, both the Board and Legal Prep indemnify each other from legal actions stemming from actions of their own "faculty, students, patrons, employees, guests, or agents…" Pl.'s Ex. 3, § 14(a)-(b).

Moreover, the Illinois School Code deems Charter School autonomous from the Board,

stating: "A charter school shall be administered and governed by *its* board of directors or other governing body in the manner provided in its charter." 105 ILCS 5/27A-5(c) (emphasis added). The School Code requires a charter school to "be organized and operated as a nonprofit corporation or other discrete, legal, nonprofit entity authorized under the laws of the State of Illinois." 105 ILCS 5/27A-5(a). It also states that "a person shall be deemed to be employed by a charter school unless a collective bargaining agreement or the charter school contract otherwise provides," and that "a bargaining unit of charter school employees shall be separate and distinct from any bargaining units formed from employees of a school district in which the charter school is located." 105 ILCS 27A-10(a); 105 ILCS 5/27A-7(a)(11). Finally, the School Code prohibits the Board from requiring its employees or students to be employed by or enrolled in a charter school. 105 ILCS 5/27A-4(f), (g).

The very exhibits Plaintiff attaches to her Complaint, as well as the Illinois School Code, prove the falsity in her claim that the Board managed or controlled Legal Prep and its staff. *Compare* Pl. Ex. 1-3 *with* Compl., ¶¶ 14-15, 19, 26, 28-29, 33, 42, 66-69. Plaintiff cannot avoid the reality that her allegation is categorically false. Exhibits that contradict allegations must be taken as truth even on a motion to dismiss. "In the event of a conflict between a complaint proper and an attachment thereto that forms the basis of the plaintiffs' claims, the attachment prevails, and dismissal is warranted if, as here, the attachment negates the plaintiffs' claims." *Thompson v. Ill. Dep't of Professional Reg.*, 300 F.3d 750, 754 (7th Cir. 2002); *see also N. Ind. Gun 7 Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations"). Under these facts, and as more fully discussed below, the Board abided by its requirements and cannot be liable for Legal Prep's decision to retain Helaire-Jones as an employee after the Board notified it of his criminal past. The Board should, therefore, be dismissed from this action, just as it was in *Walker*.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE IX.

Title IX provides in pertinent part that, "no person...shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To maintain a claim under Title IX, Plaintiff must allege: (1) the misconduct [s]he suffered was based on [her] sex; (2) school officals had "actual knowledge" of the sexual misconduct; (3) the sexual misconduct was "so severe, pervasive, and objectively offensive" that it deprived [her] of access to educational opportunities; and (4) school officials' response to known sexual misconduce was "deliberately indifferent." *Doe v. Galter*, 768 F.3d 611, 613 (7th Cir. 2014) (quoting *Davis v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629, 648 (1999). Plaintiff does not sufficiently allege these required elements.

### A. Plaintiff Fails to Allege the Board Excluded Her From Educational Programs.

Plaintiff's Title IX claim against the Board fails because the Board did not deny her access to any educational programs. The Supreme Court is clear that a defendant must "exclude persons from participation in, deny persons the benefits of, or subject persons to discrimination under its programs or activities in order to be liable under Title IX." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-641 (1999). As such, Title IX claims only arise when a defendant has failed to protect its *own* students from the tortious acts of third parties. *Id.* at 644. Here, Plaintiff expressly pleads she was a student of Legal Prep. Compl., ¶35. She does not allege she ever attended a CPS school or otherwise accessed the Board's services, programs, or activities. Even accepting Plaintiff's allegations as true, any educational opportunities denied to Plaintiff were denied by Legal Prep, not the Board.

### B. Plaintiff Fails to Allege Any Misconduct Against the Board.

Under Title IX, a defendant can only be liable for its *own* misconduct. *See Davis*, 526 U.S. at 641. Liability may not be imputed to a defendant for the misconduct of another. *Id.* at 642. The allegations prove the Board did not commit any misconduct. Specifically, the Agreement required the Board to conduct criminal background checks on all of Legal Prep's prospective and existing

5

employees. Compl., ¶25. Plaintiff alleges the Board did this. *Id.*, ¶32(c). The Agreement then required the Board to inform Legal Prep whether it would or would not hire, or continue to employ, the staff member. Pl.'s Ex. 3, p. 12.[2] Plaintiff attaches as an exhibit to the Complaint proof that the Board informed Legal Prep that Helaire-Jones was not eligible for hire with the Board and provided Legal Prep with the Background Check report with Helaire-Jones' criminal history. Pl.'s Ex. 5. Even construing all pleaded facts as true and drawing all reasonable inferences in Plaintiff's favor, there is simply no basis for demonstrating the Board committed any misconduct. The exact opposite is true – the Board warned Legal Prep not to hire Helaire-Jones. The Board cannot be responsible for Legal Prep ignoring this warning. *See Davis*, 526 U.S. at 641-642.

Significantly, Title IX liability only exists when the defendant exercises "substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645. As stated *supra*, Plaintiff did not control Legal Prep or its employees, and the injury at issue occurred at Legal Prep, not on Board property. Compl., ¶35-40. Count I should be dismissed with prejudice.

### C. Plaintiff Fails to Plead any Board Official with Authority to Institute Corrective Measures was Deliberately Indifferent.

Plaintiff also cannot show the Board had authority to issue corrective measures against Helaire-Jones to prevent the alleged injury. In *Gebser*, the Supreme Court clarified the standard for determining whether a school district may be held liable under Title IX when a teacher sexually harasses a student. 524 U.S. at 277. The Supreme Court held school districts cannot be held liable unless an employee with supervisory power over the offending employee "actually knew of the abuse, had the power to end the abuse, and failed to do so." *Id.* at 280. The Court explained Title IX

---

[2] As part of her pattern of misrepresentations, Plaintiff falsely claims the Board may reject or accept a Legal Prep prospective employee's application. Compl., ¶26. The actual Agreement states, "After the Board receives results from the Background Checks, the Board shall conduct its standard adjudication process and share the following information with the Charter School…" Pl. Ex. 3, p. 12. It is, thus, patently untrue that the Board could reject or accept an applicant for employment with Legal Prep.

presupposes an official has been advised of a violation and refuses to take action to bring the school into compliance with the statute. *Id.* at 290. Put differently, Title IX imposes liability only where the school has made an "official decision not to remedy the violation." *Id.*

Here, the Board *did* take action to prevent the alleged injury - it conducted a background check on Helaire-Jones and notified Legal Prep it would not hire him. Pl. Ex. 5. Beyond that, the Board had no authority to force Legal Prep to terminate Helaire-Jones' employment. Pl.'s Ex. 3, p. 15; *see also Walker*, 2021 U.S. Dist. LEXIS 56292, at *13 ("[T]his Court finds it implausible [under the identical facts of the instant case] that the Board's alleged practice of ineffective background checks was the moving force behind Plaintiff's injury"). Because no Board employee had authority to issue corrective action against Helaire-Jones, it cannot be liable for his alleged actions.

### III. THE DELIBERATE INDIFFERENCE CLAIM FAILS AS A MATTER OF LAW.

In the context of a Section 1983 due process claim, the Supreme Court describes deliberate indifference as an official decision to "consciously disregard an obvious risk that [another] would subsequently inflict a particular constitutional injury." *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 411 (1997). Deliberate indifference is more than mere negligence. *See id.* at 407. "Deliberate indifference implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred from the defendant's failure to prevent it." *Thomas v. Walton*, 461 F. Supp. 2d 786, 793 (S.D. Ill. 2006). It is "recklessness in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred." *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992). Here, as described above, Plaintiff has alleged (and her exhibits prove) the Board acted at all times responsibly and in compliance with the Agreement.

Courts routinely find conduct more egregious than that alleged here to not be deliberately indifferent. In *Bd. of Cnty. Comm'rs v. Bryan Cnty., Okla v. Brown*, 520 U.S. 397 (1997), the Supreme Court

examined whether a municipality could be liable under Section 1983 for a single hiring decision. In *Brown*, an arrestee brought a claim against the county, county sheriff, and reserve deputy for injuries during an automobile stop. *Id.* at 400. The arrestee alleged the sheriff should not have hired the deputy that caused his injuries and that a proper background check would have prevented the hiring the deputy who had a criminal background at the time of hiring *Id.* at 401. The Supreme Court held the plaintiff could not prevail because he was unable to demonstrate the sheriff's hiring decision reflected a "conscious disregard for a high risk that [the deputy] would use excessive force in violation of respondents' federal protected right." *Id.* at 398. Here, unlike in *Brown*, Plaintiff alleges the Board conducted a background check and took responsive action. Compl. ¶ 32; *see also* Pl. Ex. 5. Where a municipality is not liable for hiring an employee without conducting a background check, the Board cannot be liable for Legal Prep's decision to hire an employee it warned Legal Prep not to. Plaintiff's due process deliberate indifference claim against the Board cannot survive dismissal.

## IV. THE STATE CREATED DANGER CLAIM CANNOT SURVIVE DISMISSAL.

Subject to two exceptions, state actors do not owe a duty to protect their citizens from the abuses and violence of private citizens. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989). Exceptions to this rule are: (1) if the state actor has a special relationship with the private citizen or (2) the state created danger exception. *Id.* at 198-201. The Seventh Circuit has explicitly rejected the notion that schools have a special relationship with their students. *See J.O. v. Alton Comm. Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990) (holding schools and administrators had no affirmative duty to students under the Due Process Clause of the Fourteenth Amendment). Therefore, schools do not owe an affirmative duty to students in the educational setting.

To state a claim under the second exception, the state, by its affirmative acts, must (1) create or increase a danger faced by an individual; (2) the failure to protect an individual from such a danger must the the proximate cause of the injury to the individual; and (3) the state's failure to protect the

8

individual must "shock the conscience." *Kind v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 812 (7th Cir. 2007) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). In *A.M.C. v. Sch. Dist. of La Crosse*, No. 18-cv-175-bbc, 2018 U.S. Dist. LEXIS 167068 (W.D. Wis. 2018), a plaintiff alleged one student assaulted another after teachers provided the student with more freedoms around the school despite the school's knowledge that the student had previously been accused of sexually assaulting others. The court went on to say that the term increasing the danger meant "the state did something that turned a potential danger into an actual one, rather than just stood by and did nothing to prevent private violence." *Id.* at *13 (quoting *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015)). The court found the school's action in providing a student with additional freedoms merely amounted to a failure to supervise. *Id.* at *14. Mere indifference or inaction to private violence is insufficient to proceed under the state-created danger theory. *Id.*

Here, Plaintiff argues the Board did not prevent the sexual abuse of J.R. Compl., ¶ 138. This allegation does not support a state created danger claim because Plaintiff fails to allege the Board *affirmatively* did something to create or increase a danger. *Id.* The court in *Walker* addressed and rejected a claim based on this exact same conduct. 2021 U.S. Dist. LEXIS 56292, *19-20 (holding no authority exists for imposing a special duty on the board of education).[3]

Furthermore, the Board's behavior does not rise to the level such that it "shocks the conscience." Only conduct by school officials on the most culpable end of the spectrum can be said to shock the conscience. *King*, 496 F.3d at 818-19. Making a bad decision or acting negligently does not constitute "conscience shocking" behavior. *See Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 655 (7th Cir. 2011). Plaintiff does not allege any Board action that comes close to this standard. *See Waubanascum v. Shawano Cnty.*, 416 F.3d 658, 667-68 (7th Cir. 2005) (finding failure to conduct an

---

[3] Plaintiff's puzzling inclusion of the 1000+ page report "Preventing and Responding to Sexual Misconduct against Students in Chicago Public Schools" (Ex. 11) does nothing to further her claim that the Board is responsible for Legal Prep's personnel decisions.

adequate background check to be mere negligence). In sum, the Board committed no affirmative steps that increased or created the danger of harm to Plaintiff.

## V. COURT CAN RELINQUISH JURISDICTION OVER STATE LAW CLAIMS.

Because Plaintiff's federal claims all fail, the Court can decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c); *Dent v. Renaissance Mktg. Corp.*, No. 14 C 02999, 2015 U.S. Dist. LEXIS 70248, at \*21 (N.D. Ill. June 1, 2015). To the extent the Court considers Plaintiff's supplemental state law claims, they fail on the merits as described below.

## VI. PLAINTIFF'S WILLFUL AND WANTON CONDUCT CLAIM FAILS.

Plaintiff's claim for willful and wanton conduct fails because Illinois law does not provide for such an independent cause of action. *Walker*, 2021 U.S. Dist. LEXIS 56292, at \*14 (dismissing the Board from a willful and wanton misconduct claim under identical facts). Instead, willful and wanton conduct constitutes an aggravated form of negligence. *Id.* (citing *Krywin v. Chi. Transit Auth.*, 238 Ill. 2d 215, 235 (2010)). Plaintiff brings a negligence claim against Legal Prep, but not the Board. Because "willful and wanton conduct" is not a stand-alone claim, Plaintiff's Court VI can be dismissed on that basis. Regardless, the Board is immunize under the Tort Immunity Act.

Sections 2-103 and 2-205

First, Sections 2-103 and 2-205 of the Tort Immunity Act provide the Board with absolute immunity for failure to implement, follow, or enforce the law or Board rules or policies. Section 2-103 states, "[a] local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or failing to enforce any law." 745 ILCS 10/2-103. Similarly, Section 2-205 immunizes the "failure to enforce any law." 745 ILCS 10/2-205. Because the Board's policies are adopted as business at its regularly scheduled meetings, they have the force of law and any injury caused by adopting or failing to follow them are subject to Section 2-103 immunity. *See* 105 ILCS 5/34-19.

Section 4-102

Second, Section 4-102, which provides blanket immunity for failure to provide police protection or service, applies to this case. This section provides:

> Neither a local public entity, nor a public employee is liable for failure to establish a police department or otherwise provide police protection services or, if police protection services is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes and failure to identify and apprehend criminals…

5 ILCS 10/4-102.

The Illinois Appellate Court "has long recognized that immunity provided by section 4-102 applies in contexts beyond 'the traditional police role of law enforcement, police protection, and apprehension of criminals.'" *Rodriquez v. City of Chicago*, 2013 IL App. (1st) 122934 (Sept. 6, 2013), ¶18 (quoting *Kavanaugh v. Midwest Club, Inc.*, 164 Ill. App. 3d 213, 221 (1987)).

Section 2-201 and Section 2-109

Sections 2-201 and 2-109 prohibit liability against the Board for discretionary acts. This grant of immunity is based on the tenant that officials "should be allowed to exercise their judgment in rendering decisions without fear that a good-faith mistake might subject them to liability." *Harrison v. Hardin County Comm. Unit. Sch. Dist. No. 1*, 758 N.E. 2d 848, 852-53 (Ill. 2001). Here, Plaintiff alleges the Board failed to conduct adequate background checks, improperly hired Helaire-Jones, and failed to supervise its employees. Compl., ¶¶ 32, 66, 107. Even if Helaire-Jones was a Board employee (he was not) these alleged actions were inherently discretionary. *See Sanders v. United States*, 324 F. Supp. 3d 636, 649 (D.S.C. 2018) (granting motion to dismiss based on the discretionary function exception in case involving "glaring weaknesses" in the defendant's background check system); *Doe 20 v. Bd. of Educ. of Comm. Unity Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 989 (C.D. Ill. 2010) (finding school district immune from claims of negligent hiring and retention where employee allegedly had criminal background as hiring and firing are discretionary decisions); *Rogers v. Cook*, No. 08 C 2270, 2008 U.S.

11

Dist. LEXIS, at *7-8 (N.D. Ill Dec. 23, 2008) (dismissing negligent retention claim as barred by discretionary immunity). The Board asks this Court to follow the well-reasoned rationale Judge Blakey used in the *Walker* case, which presents identical claims, and dismiss Plaintiff's claim for willful and wanton conduct. 2021 U.S. Dist. LEXIS 56292, at *14.

## VII. PLAINTIFF FAILS TO PLEAD FRAUDULENT CONCEALMENT.

To state a claim for fraudulent concealment, Plaintiff must allege: (1) concealment of a material fact; (2) concealment was intended to induce a false belief under circumstances creating a duty to speak; (3) an innocent party could not have discovered the truth through reasonable inquiry or inspection and relied upon silence as misrepresentation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had it been award of the information; and (5) reliance by the party from whom the fact was concealed led to that party's injury. *Ruane v. Amore*, 287 Ill. App. 3d 465, 475. (1st Dist. 1997); *D'attomo v. Baumbeck*, 2015 IL App. (2d) 140865, ¶ 57. For such a claim to survive, a plaintiff must state with "articularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff may need to perform a pre-complaint investigation to provide "the who, what, when, where, and how" of the fraud or mistake. *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018). That is, Plaintiff should provide a "sufficiently detailed and cohesive theory of the fraud." *Id.* at 582. Plaintiff's conclusory allegations fall woefully short of the standard required by Rule 9. Plaintiff has not alleged the Board concealed any fact. Rather, the Complaint is replete with vague allegations the Board "suppressed the truth," failed to disclose, and conveyed a material misrepresentation, without any factual support. *See* Compl., ¶¶186(a)-(c). The complaint belies these conclusory allegations by acknowledging the Board completed the required background check on Helaire-Jones and shared that information with Legal Prep. Compl., ¶32. As such, Plaintiff offers insufficient facts to support this claim (Count IX).

## VIII. PLAINTIFF CANNOT MAINTAIN HER IGVA CLAIM AGAINST THE BOARD.

The IGVA allows a plaintiff to recover civil damages against a person or persons perpetrating gender related violence. *See* 740 ILCS 82/10 (West 2018). The IGVA defines "perpetrating" as "personally committing…or personally encouraging or assisting...gender-related violence." *Id.* In *Gasic v. Marquette Mgmt.*, 2019 IL App. (3d) 170756, 146 N.E. 3d 10, an Illinois court found that under limited circumstances a corporation could act "personally" for purposes of liability under the IGVA. *Gasic v. Marquette Mgmt.*, 2019 IL App. (3d) 170756, *P14 (May 17, 2019) (citing *Smith v. Rosebud Farmstand*, 909 F. Supp. 2d 1001 (N.D. Ill. 2011) and *Cruz v. Primary Staffing, Inc.*, No. 10 C 5653, 2011 U.S. Dist LEXIS 29237 (N.D. Ill. Mar. 22, 2011)).

In *Smith*, a plaintiff brought an IGVA claim based on repeated sexual harassment by co-workers, including grabbing, touching, slapping, and the use of slurs. 909 F. Supp. 2d at 1002. The plaintiff alleged that when he notified his two managers, they did nothing to stop it, but instead joined in the harassment. *Id.* This Court determined the plaintiff "pleaded facts that [led] to an inference that that defendant (via its supervisors) received Plaintiff's complaints of sexual harassment or assault by its managers and employees and that it took no action ...choosing to punish Plaintiff instead." *Id.* at 1009. In *Cruz*, the IGVA claim alleged plaintiff was subject to gender-related violence through her supervisor, Acosta. 2011 U.S. Dist. LEXIS 2937, at *3. The court determined the plaintiff "pleaded facts that [led] to an inference that the company had received many complaints of sexual harassment or assault by Acosta and that it took no action against Acosta...choosing to punish the complainants instead." *Id.* at *4. The court held the allegations were sufficient to maintain a claim against the defendant for encouraging or assisting the gender-related violence. *Id.*

Here, Plaintiff's case is easily distinguishable from both *Smith* and *Cruz* because Plaintiff merely alleges the Board "knew of should have known" of Helaire-Jones's criminal background and abusive behavior. Compl., ¶202. The Complaint is devoid of the types of allegations against the Board found to be sufficient in *Smith* or *Cruz*. For example, the Complaint does not allege the Board received

13

multiple complaints about Helaire-Jones, ignored those complaints, or punished J.R. *See id.*, ¶¶ 193-198. Plaintiff's allegations fall far short of establishing the Board encouraged or assisted Helaire-Jones' acts, and Plaintiff's claim is subject to dismissal. *See Schaeffer v. Glendale Nissan Inc*, 2020 U.S. Dist LEXIS 2923, at *8 (N.D. Ill. Jan 6, 2020) (dismissing IGVA claim because plaintiff failed to allege the corporation personally assisted in or personally encouraged the gender-related violence.)

## IX. PLAINTIFF'S IHCA CLAIM FAILS AS A MATTER OF LAW.

Finally, Plaintiff alleges the Board violated her rights under the Illinois Hate Crime Act. Compl. ¶¶ 215-220. Plaintiff's claim fails for three reasons: (1) She alleges no facts showing her injuries were the result of a hate crime; (2) Helaire-Jones was never a Board employee; and (3) Sexual assault is, by definition, outside the scope of Helaire-Jones' employment.

### A. Plaintiff offers no evidence that her injuries were the result of a hate crime.

A plaintiff may only recover under the IHCA when a hate crime was committed. *Id.* The IHCA explains that a person commits a hate crime when "by reason of the actual or perceived race, color, creed, religion, ancestry, gender…he or she commits assault, battery, aggravated assault…" 720 ILCS 5/12-7.1(a). Thus, just because an offender commits execrable acts, it does not follow that he has committed a hate crime. Indeed, Illinois courts have elaborated that the IHCA requires a "causal connection between a victim's race, religion, etc., and the offender's reason for choosing the victim." *People v. Vladimir P.*, 283 Ill. App. 3d 1068, 1075 (1st Dist. 1996); *see also Duran v. Town of Cicero*, No. 01 C 6858, 2005 U.S. Dist. LEXIS (N.D. Ill. Oct. 7, 2005) (finding in favor of defendant when plaintiff was unable to demonstrate the battery was motivated by plaintiff's ethnicity). Here, while Plaintiff alleges extreme and ostensibly criminal conduct by Helaire-Jones, she nowhere connects this conduct to her membership in a protected class.

### B. Helaire-Jones was never a Board employee.

Further, liability to the Board under the IHCA could only arise under a *respondeat superior* basis.

*See Doe 20 v. Bd. of Educ. of Comm. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 982 (C.D. Ill. 2010). Under the doctrine of *respondeat superior*, an employer may be held liable for acts of its employees in limited circumstances. *See Deloney v. Bd. of Educ.* 281 Ill. App. 3d 775, 783-84 (citing *Webb v. Jewell Cos.*, 137 Ill. App. 3d 1004, 1006 (1st Dist. 1985)). As noted above, Helaire Jones was never a Board employee and the Board cannot be held liable for his acts. *See supra* § I.

### C. Alleged sexual assault by Helaire-Jones is outside the scope of employment.

Even if Helaire-Jones had an employment relationship with the Board, Plaintiff's claim still fails because sexual assault is plainly outside the scope of employment. An employer may only be held liable for acts of its employees when such acts are committed within the scope of employment and in furtherance of the business of the employer. *See Deloney*, 281 Ill. App. 3d 775, 783-84 (reviewing cases for the proposition that alleged sexual misconduct "by its very nature precludes a conclusion that it was committed within the scope of employment). Sexual misconduct is solely for the purpose or benefit of the employee. *Webb*, 137 Ill. App. 3d at 1004. Plaintiff's hate crime claim against the Board (Count XIV) should be dismissed on this basis as well.

### X. REQUEST FOR PUNITIVE DAMAGES MUST BE STRICKEN.

Plaintiff requests punitive damages against the Board, Compl., ¶¶25, 28, 33, but these are not recoverable under the Illinois Tort Immunity Act. 745 ILCS 10/2-102. ("a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party"). Accordingly, the Board asks this Court to strike that request.

### CONCLUSION

The Board respectfully requests the Court grant the Board's Motion in its entirety with prejudice, or alternatively grant the Board's Motion with respect to Plaintiff's federal claims and decline supplemental jurisdiction on any remaining state claims, and any other just relief.

Dated: June 4, 2021. Respectfully submitted,

**DEFENDANT BOARD OF EDUCATION OF THE CITY OF CHICAGO**

JOSEPH MORIARTY, General Counsel

By: *s/ James D. Mackey*
James Mackey, Attorney No. 6324276

Lindsey E. Goldberg / legoldberg@cps.edu
James D. Mackey / jdmackey4@cps.edu
Board of Education of the City of Chicago
One North Dearborn Street
Law Department, Suite 900
Chicago, Illinois 60602
Tel: (773) 553-1700
Fax: (773) 553-1701

**CERTIFICATE OF SERVICE**

I, James D. Mackey, an attorney of record, hereby state that on June 4, 2021, I electronically filed the **Defendants' Motion to Dismiss Plaintiff's Amended Complaint** using the Court's CM/ECF Filing System, which will send electronic notice to all counsel of record including:

Yao O. Dinzulu
Attorney for Plaintiff
DINIZULU LAW GROUP, LTD.
221 N. LaSalle, Suite 1100
Chicago, IL 60601
(312) 384-1920
Dinizulu@dinizululawgroup.com

By: /s/ James D. Mackey
James D. Mackey, Attorney No. 6324276